NICHOLAS HOLMES *v.* ANDREW HOLMES, *Administrator of* GIL-BERT HOLMES.

[IN CHANCERY.]

*Will. Construction. Evidence. Jurisdiction.*

To aid in giving construction to a will parol evidence is admissible to show the relations which the testator sustained to the various objects of his bounty, and the circumstances surrounding him.

Holmes *v.* Holmes, Adm'r.

The orator conveyed his farm by deed of warranty to H. as security for a a note, and took H.'s bond providing for a reconveyance upon payment of the note. H. afterwards devised the same farm to the orator, but the devise said nothing about discharging the note. The orator was the testator's uncle and one of his heirs at law, and would have been entitled to share in his estate if he had died intestate. The testator's estate amounted to $75,000. *Held,* that in view of these circumstances, existing at the time the will was made, the effect of the devise was to discharge the debt, no contrary intent being manifest in the will.

*Quere.* Whether in case the intent of the testator to have the devise of the farm to the orator operate as a release or satisfaction of the debt, could not be found in the language of the will, considered in connection with all the surrounding facts, extrinsic evidence could be admitted to show that such was in fact the purpose of the testator, and thus make it effectual.

No argument can be fairly drawn against the intent of the testator to discharge this note, from the fact that there was another clause in the will directing the executor to give up a certain note held by the testator against certain other parties, and to give them a further legacy of five hundred dollars, declared to be in addition to the note directed to be given up.

The orator's bill in this case sought to have the representatives of the testator enjoined from prosecuting the debt against the devisee. *Held,* that a court of equity had jurisdiction.

Where a bill is brought seeking both discovery and relief, and material discovery is elicited, the court will proceed to grant proper relief, and will not turn the orator around to seek relief at law, even if the relief was such as a court of law might grant.

Appeal from Chancery. The bill alleged in substance, that the orator on or about the 13th day of June, 1843, borrowed of Gilbert Holmes, residing in the state of New York, the sum of $3,100., for which he gave his promissory note, dated May 1st, 1843, payable in two years, with interest annually; and also to secure the payment of this note the orator conveyed to said Gilbert by deed of warranty, dated the 13th day of June, 1843, his farm in Charlotte, of which he was then seized in fee and possessed; that the said Gilbert on the same 13th day of June, 1843, executed and delivered to the orator his penal bond in the sum of $6,000. with a condition annexed providing that the orator should occupy the farm until the note fell due without payment of rent, and on payment of the note the farm should be re-conveyed to the orator; that the note was not paid when due,

but was permitted to lie until about May 1st, 1854, when, by mutual agreement of the parties, a new note was substituted for the first one for the sum then due, to wit: $2,950. payable on demand with interest, and the deed and bond were left standing in force as before for the mutual security of the parties ; that the said Gilbert, on or about the 29th day of April, 1858, still residing in the state of New York, had accumulated an estate of about $75,000 ; that he was a bachelor ; that the orator was his uncle, and one of his next of kin, and as such was entitled by the laws of New York as well as Vermont to a share in his estate, if not disposed of by will, greater than the amount of said note ; that on the same 29th of April, 1858, the said Gilbert Holmes made his last will and testament conformably to law, in which was inserted a clause in the words following:

" I give and devise unto my uncle Nicholas Holmes, of Vermont, and his heirs for ever, the farm of land which he now occupies, being the same farm he deeded to me June 13th, 1843, and should the said Nicholas not survive me, I give and devise the said farm to his heirs for ever" ; that the said Gilbert disposed of all the rest and residue of his estate by said will without leaving anything to the orator except as aforesaid ; that the said Gilbert died in December, 1861, or January, 1862 ; that at the time said Gilbert died, the orator had children, who, had the orator deceased, would have become his heirs at law, all of which was known to said Gilbert at the time of making his will and thenceforth ; that after the making of his will the said Gilbert frequently stated that he had forgiven said debt by his will, and that the same was paid in that way, or words to that effect ; that the will was proved and allowed in New York, and in Vermont by the probate court for the district of Chittenden, August 12th, 1862, and, thereupon, one Andrew Holmes, of Monkton, Addison county, was appointed administrator under the will ; that the said Andrew, as such administrator, about the 25th day of November, 1862, pretended that said note was still due, and had not been discharged by force of said will, although he said such was the intention of said Gilbert, and he commenced a suit at law against the orator for the recovery of the

amount of said note, returnable to the December Term, 1862, Addison county court, and that the action was duly entered in court, and the orator appeared therein by counsel, and the cause was continued; that the said Andrew threatens to bring the case to trial at the next term and enforce collection thereof against the orator.

The orator prayed that the said Andrew Holmes, administrator, might be directed to deliver the said note to be cancelled, and that he be perpetually enjoined from further prosecuting his said suit, or any other suit against the orator for the recovery of the amount of said note, or any part thereof; and for general relief.

The defendant, in his answer, admitted most of the allegations of the bill, but insisted that the statements of said Gilbert that he never expected to collect the said debt of the orator, were not admissible as evidence in this cause, and cannot be received to show any different intention in said Gilbert in the making of said will from that which appears on its face and is to be drawn from its language, or in any wise to vary or extend the construction of the terms of said will; that he had no knowledge, information or belief as to the intention of said Gilbert in making the will, and denied that he had any other intention in regard to said debt, in the making of said will, than what is therein legally expressed.

And in further answer, the defendant claimed and insisted in defence:

1st. That the said note is not in any way discharged, extinguished or relinquished, nor the collection thereof suspended by the will, or by any of the terms or provisions thereof, either directly or impliedly.

2d. That the language of the will, legally and fairly construed, is conclusive as to the effect of will and the intention of the testator, and is not to be aided, extended, varied or controlled by any extrinsic acts or statements of the testator.

3d. That whatever may be the construction or effect of the will, the complainant has an ample remedy at law, so far as the facts stated in his bill entitle him to any remedy at all, in the

defence of the action at law so brought on the note, as aforesaid, by this defendant, and now pending.

One of the provisions of the will was in the words following : "I direct my executor to give up and discharge a promissory note I hold against Abagail Wing, Mary Wing and Phebe Wing. And in addition thereto, I give unto said Abagail Wing, Mary Wing and Phebe Wing five hundred dollars, share and share alike."

The court decreed that, according to the prayer of the bill, the defendant be perpetually enjoined from collecting or attempting to collect the note in said bill mentioned, and that the orator recover his costs ; from which decree the defendant appealed.

*E. J. Phelps*, for the defendant.

*Geo. F. Edmunds*, for the orator.

POLAND, CH. J.   It is perfectly well settled that in giving a construction to a will the court are to place themselves in the shoes of the testator, and his language is to be construed and interpreted in the light afforded by the state of facts with which he was surrounded, and his relations to the various objects of his bounty, and any connection between them and the estate which he undertakes to dispose of by his will.

For the purpose of showing these surrounding circumstances and relations, parol evidence is admissible, and its admission to this extent is not considered at all in conflict with the general rule of law, that parol evidence is not admissible to control or explain a will.   The admission of such evidence is not peculiar to the case of wills, but applies equally to the ordinary case of written contracts, which cannot be varied or contradicted by verbal evidence.

The facts of the relationship between the testator and the orator ; that the orator was one of the heirs at law of the testator, and would have been entitled to share in his estate if he died intestate ; the amount of the testators property ; and the manner in which he held the title to the farm devised to the orator,

merely as a pledge or security for the payment of his debts; are all proper to be taken into consideration in determining the testator's design and purpose in making the devise to the orator.

Looking at the will in the light of these facts, what is the fair intent and spirit of the devise? With no other light than the mere language of the will, and with no knowledge of the state of facts existing, the intent is plain; to make the orator a direct and absolute gift of the farm. But although the deed from the orator to the testator, vested apparently the absolute legal title in the testator, still it is conceded that in fact he only held a mortgage interest in it to secure his debt against the orator, and that upon payment of that debt, his title would be in trust merely for the orator, so that in fact the only interest the testator had was that of mortgage and that was all he could dispose of by his will.

It is conceded by the defendant that the testator intended to give to the orator all his interest in the farm, whatever it might be; but he insists that from the terms of the will, it is to be inferred that he only intended to surrender or discharge the security he held upon the land for the payment of his debt, and not to discharge or forgive the debt itself, but to retain his debt so that his representatives could still enforce payment of it. On the other hand it is claimed that the evident intent of the testator was to forgive or discharge the debt itself; and that as in form he held the entire and absolute title to the farm, he treated that as the representative security for the debt, and by thus assuming to give the farm absolutely, he treated it as his own, and standing in the place and lieu of the debt itself. The will of the testator does not in terms forgive or discharge the orator's debt to him. Is it fairly to be implied from the terms of the will and the circumstances existing at the time the will was made; and if not, then is extrinsic proof admissible to show that such was the real intent and purpose of the testator?

In reference to the first enquiry, it may be proper to refer to some of the established rules that have been adopted in the construction of devises of lands subject to mortgage:

It seems well settled that a specific devise of land, where the

testator's title is only that of mortgagee, will give the devisee, not the mere dry legal title in trust, but will give him the same real interest the testator had ; in other words it will give him not only the legal estate in the land, but make him the owner of the mortgage debt, unless a contrary intent be manifested in the will, as if the mortgage debt be devised to another. 1 Pow. on Mortgage 409 ; 1 Jarman on Wills 634.

So where the mortgagor of lands devises the same specifically, the general rule is that the devisee is entitled to hold the land exonerated from the mortgage debt, that is to have the mortgage debt paid off out of the estate of the testator, unless it appear from the will that the testator intended he should take only his interest subject to the mortgage. 2 Jarman 553–554.

These rules are founded upon the presumed intent of the testator. Ordinarily when a testator makes a bequest or devise to another, it is presumed he intends to confer a benefit ; to make the devisee the object of his bounty ; and not to make him a mere trustee for another's benefit, and that he intends a benefit as extensive and valuable as the thing given by the devise ; and the intent to make him hold for the benefit of another, or the gift less than the thing devised, must affirmatively appear from some provision of the will.

In the present case the devise is directly to the mortgagor, instead of a devisee having no interest whatever in the land. Why should not the same presumption arise that the testator intended to give him his real interest, and all the interest he had, as if devised to another? Indeed it seems to us the presumption of actual intent is stronger in this case, than if the same devise had been to a third person. But if the testator did not intend this devise to have the effect to release the orator's debt, and intended to preserve it to be collected by his representatives, how came he to make the devise to the orator at all? All the right he had against the orator, was to have payment of his debt, and when that was done, the farm belonged to the orator. It may well be inferred from the fact that he took a conveyance of the orator's farm to secure this large debt, and had held the title for so many years, that this farm constituted the main property of

the orator, and his only means for paying so large a sum. Would it be natural or reasonable that the testator should surrender his security, which was ample and safe, and leave his representatives to getting payment out of the land by attachment, and other legal process?

It has been suggested by the counsel for the orator that if the devise is held not to have that effect to release or discharge the debt, then that the representatives of the testator had a lien on the farm for the payment of the debt. It is doubtless true that a devisee to whom a pecuniary legacy is given, but who is indebted to the testator, cannot compel by any legal proceeding a payment of his legacy, without having his debt deducted, and so it is said sometimes, that there is a lien on the legacy for the debt of the devisee. But that is in case where some legal proceeding is necessary to compel payment of the legacy.

In this case the orator had always remained in possession of the land, and was so at the death of the testator. As soon as the will was duly established, it operated to transfer again the legal title to the orator as absolutely as a conveyance, and no suit or legal proceeding was necessary to restore it to him.

We think it could not therefore properly be held that if the debt was not by implication discharged by the devise, that any lien existed on the land, and that the only remedy for the representatives would be the same as the law affords against the property of every debtor. The defendant's counsel does not claim that any such *lien* exists, but concedes the land was wholly discharged. The last clause of the devise seems strongly to rebut any inference that the testator designed to keep the debt of the orator on foot to be collected. " And should the said Nicholas not survive me, I give and devise said farm to his heirs forever."

Now in case the orator had died before the testator, the devise of the farm would have been directly to the heirs of the orator, and the title would have vested directly in them and have been entirely out of reach of the debt against the orator, and for ought that appears no sufficient means would have been left for the satisfaction of the debt.

Not the slightest evidence is afforded by the will that in such

event the title of the heirs was to be merely in trust for the representatives, or any other party who might be entitled to the mortgage debt, nor is this claimed. The apparent intent upon the face of the will was to confer a benefit or bounty upon the orator by the gift of the farm, and when it is shown that the testator was not in fact the absolute owner, but only held it as a security for his debt, his intent must be considered to be, to convey all the beneficial interest he had in it.

The legal title appeared to be wholly in the testator. If it was so in fact, then he had no debt against the orator; it was extinguished by the conveyance of the land. He devised the farm to the orator, as the title appeared to be, absolute in himself, thus treating it as taking the place of the debt, and no other reasonable inference can be drawn from it than that he intended the orator to take the farm fully exonorated from all his claim. By allowing the debt to be kept on foot, with the right to compel satisfaction of it out of the farm, we think the real intent of the testator would be defeated, and the apparent design of the testator to confer a bounty upon the orator, would be wholly defeated, and turned into a mere empty mockery. The relationship between the orator and testator; the fact that the orator was one of the testator's heirs at law; the large estate of the testator; and the fact that all his property was to be divided among mere collaterals, all tend strongly in support of the testator's intent to make a beneficial devise to the orator, and not one that was merely nominal.

Much stress has been laid by the counsel for the defendant, upon a clause in the will directing the executors to give up a note for five hundred dollars held by the testator against Abigail, Mary and Phebe Wing, to whom also a legacy of five hundred dollars is given, and declared to be in addition to the note directed to be given up.

It is argued from this, that the testator would have directed the orator's note given up, if he intended the devise of the farm to operate really as a satisfaction of it, and that as he did not, the inference must be that he did not intend the devise of the farm should so operate.

Giving a legacy to the debtor of the testator does not ordinarily operate as a discharge or satisfaction of the debt, unless so declared by the will, or by reasonable implication, because there is no obligation or duty upon the testator which it can be supposed he intended to satisfy or perform by the legacy, so it was necessary for the testator to express such intent in order to have it found to exist. But there was no connection whatever between the legacy and the debt of the Wings; they were wholly independent of each other. The case of the orator was wholly different. The testator held the farm for the debt, by a title which in form was a satisfaction of it, and devised it in the same form. In our judgment no argument is fairly drawn against what we think was the real intent of the testator in regard to the orator, from the style and manner of the bequest to the Wings.

This view of the case renders it unnecessary for us to decide another question which has been made very prominent in the argument of the case; whether in case the interest of the testator to have the devise of the farm to the orator operate as a release or satisfaction of the debt, could not be found in the language of the will, considered in connection with all the surrounding facts, extrinsic evidence could be admitted to show that such was *in fact* the purpose of the testator, and thus make it effectual. Upon this subject of the admission of extrinsic evidence to affect the provisions of a will, there seems to be a wonderful contrariety of judicial opinion, and in many respects it is difficult to say what is the established rule.

In cases where a legacy is given by a will, and there are two persons, equally answering the description of the legatee in the will, or two pieces of property equally answering the description in the devise, or where the name of a devisee is partially mistaken by the testator, parol evidence has always been admitted to show the real object or subject of the testator's bounty. The orator claims that his case comes within the principle of this class of cases, but we fail to see any such analogy between them as makes them applicable.

There is another class of cases much more analogous to the

present, where the subject of the admission of such evidence has been much discussed. Where a parent gives a legacy to a child, and afterwards makes an advancement to such child of an equal amount, it is held to be an ademption or satisfaction of the legacy. This is held upon the ground that the legacy to a child is presumed to be as a portion for such child, and if before the parent's death he pays such portion in another way, it is presumed to be a satisfaction of the legacy. This presumption is often styled "a leaning against double portions." So where a parent is under an obligation by a marriage settlement, or otherwise, for a portion to a child, and afterwards gives such child a legacy of equal amount, such legacy is presumed to be in satisfaction of the previous obligation, and upon the same grounds.

So where a testator makes a legacy to his creditor to an amount equal to his debt, it is presumed to be a satisfaction of the debt.

In all these cases if it appear from the will that the legacy was not intended as a satisfaction of a previously given portion, or of a debt due the legatee, then the presumption is rebutted, and very slight things are held sufficient for that purpose. If different in kind, or amount, or in any respect less beneficial, the presumption is rebutted. A general direction in a will for the payment of the testators debts, is held sufficient to rebut the presumption that a legacy was intended to be in satisfaction of a debt due to the legatee.

Many other thing are held sufficient on the face of the will to rebut such presumption, which need not be named, enough are stated for examples.

In all cases which rest merely upon the general presumption of satisfaction, or ademption, extrinsic evidence has been allowed to show that in fact the testator did not intend a satisfaction ; as it is stated in the cases generally—to rebut the legal presumption, and then of course evidence is also admissable in its support. If something appears on the face of the will which is sufficient to rebut the presumption of satisfaction, then whether extrinsic evidence can be admitted to show that in *fact* the testator intended it as a satisfaction, is much more doubtful.

In *Weall* v. *Rice*, 2 Russ. & My. 251, Sir John Leach, master of the rolls, held that extrinsic evidence was equally admissible in such case to show the real intention of the testator. And in *Wallace* v. *Pomfret*, 11 Ves. 542 where a legacy was given by the testator to a servant to whom he owed wages, and the executors filed a bill to have the legacy declared a satisfaction of the debt, Lord ELDON admitted evidence not only to rebut the legal presumption, " but the fair inference from the written context." But these cases have been disapproved in other cases, and such evidence rejected as being really in contradiction of the written instrument itself. As stated once before, when a testator gives a legacy to his debtor there is ordinarily no legal presumption from the fact alone, that the debt is discharged or released ; there is no obligation on the testator, of which the legacy can be presumed a fulfilment or satisfaction.

In *Zeigler* v. *Eckert*, 6 Barr, 13, an uncle had in his lifetime made advances to his nephew, for which he took bonds of the nephew. The uncle shortly before his death made his will, by which he gave the nephew a thousand dollars. After the testator's decease the executors brought suit on the bonds of the nephew. Evidence was offered and received, to show that the uncle declared it to be his purpose to surrender these bonds to the nephew, and that when he made his will he directed the person who drew it to get the bonds and give them up to the nephew. The opinion was given in the supreme court by Ch. J. GIBSON in his usual forcible style sustaining the introduction of this evidence. There being no separate equity jurisdiction in that State, the case was treated as if a bill had been brought to enforce payment of the legacy, and the debt had been set up in defence by the executors, and the evidence was considered as admissible, as rebutting the legal presumption that the legacy was not a satisfaction of the debt.

It is at least questionable, whether it would not have been more strictly true, if he had said it was introduced to raise a presumption which the law did not make, than to rebut one which it did make.

The tendency of modern decisions' seems rather to restrict,

than enlarge, the rules admitting extrinsic evidence to control the language of wills, or the legal presumptions arising upon them.

Without pursuing the subject further, it is enough to say that if this case rested upon the admissibility of parol testimony to show that the real intent of the testator was to discharge or forgive the orator's debt, we should find great difficulty in sustaining it.

It is also objected by the defendant that the case presents no sufficient ground for equitable interference to give this court jurisdiction, on the ground that if the devise of the farm to the orator in effect operates to release or discharge the note, it furnishes the orator a good defence at law to the action brought to enforce it., This objection has not been very strongly urged.

There are several grounds upon which the objection may be disposed of.

The orator's bill seeks both discovery and relief, and many things material to the support of the orator's rights are disclosed in the answer. The fact that the testator held the deed merely as a security for his debt, and that the subsisting note which is sued was given in lieu of the original note, were facts material to the orator's case, and disclosed in the answer. The orator might have been able to prove them, or he might not. If he had not by our recent statute been made a witness, it is at least doubtful if he could. But if he could, we suppose that does not oust the jurisdiction founded on the discovery obtained by the answer. The rule, as we understand it, is, that when a bill is brought seeking both discovery and relief, and material discovery is elicited, the court will proceed to grant the proper relief, and will not turn the orator around to seek relief at law, even if the relief were such as a court of law might grant. It may not. be universally true that obtaining discovery will give a court of equity jurisdiction to grant relief, but this is the general rule.

The fact that the note against the orator was negotiable, and might be transferred to, and sued by another, might probably be made a sufficient ground of equity jurisdiction to support the bill.

But without seeking other grounds to sustain the jurisdiction, it seems to us clear that the subject matter of the case itself

35

is one of proper equity cognizance.   Courts of equity have always been regarded as the appropriate tribunals to enforce payment of legacies, on the ground that the executor was a mere trustee, and held the money in trust for the legatee. And this principle has not been confined merely to cases brought directly to enforce payment of a legacy, but has been extended to almost every variety of case where the validity of a legacy or devise, or its effect, was brought in question.   *Wallace* v. *Pomfret,* cited above, is an instance of this class of cases, being a bill brought by executors to have a legacy declared a satisfaction of a debt due the legatee from the testator ; and cases of a similar character could be cited to any extent.   But if the objection here be well founded, that there was a remedy at law, it would have been equally valid in that case.   In *Zeigler* v. *Eckert,* before cited, from Pennsylvania, the defence was made in an action at law, but it was sustained by the court upon the ground that in the absence of any separate equity jurisdiction in that state, the law courts acted upon and carried out principles which in other jurisdictions would only be enforced by a court of equity. It is clear that, if no suit had been brought upon the note, the orator might have sustained a bill to have the legacy or devise of the farm declared a satisfaction of his debt.   We are quite unable to see how the fact that the representatives of the testator were endeavoring to enforce payment by a suit at law, could take away the jurisdiction which the court had before.   It is not necessary for us to decide whether defence might have been made at law to the note or not.   It is manifest that it would have presented a very awkward species of defence. ' It was not a payment, nor an accord and satisfaction.   It was not even a direct testamentary discharge or release, but one of *implied satisfaction* merely.   This seems always to have been regarded as an appropriate head of equity jurisdiction, and even if a court of law would also give effect to it, it would only make a case of concurrent jurisdiction.   The case, in the language of the English chancery, would properly be termed a "legacy cause," and as such, appropriate for a court of equity to try.

The chancellor's decree is affirmed.