[S. F. No. 8266.  Department One.—October 8, 1917.]

In the Matter of the Estate of JAMES HEALY, Deceased. P. E. MULLIGAN et al., Respondents, v. BRIDGET RHEAD, Appellant.

WILLS — CONSTRUCTION — WORDS AND PHRASES—"BY RIGHT OF REPRE-SENTATION"—GRANDNEPHEWS AND GRANDNIECES.—Where a testator, who left no descendants and whose sisters and their children had died before him, leaving descendants who were the grandchildren of these sisters and grandnephews and grandnieces of the testator, who bequeathed the residue of his personal property to these grand-nephews and grandnieces, describing them as such and also as the children of nephews who were respectively sons of his sisters, whom he named, and in his will the testator declared that he gave and be-queathed this residuary estate to these grandnephews and grand-nieces "by right of representation," these residuary legatees took as representing the sisters of the testator as the parent stock and not by right of representation of their parents, the children of the tes-tator's sister.

ID.—CONSTRUCTION — RIGHT OF REPRESENTATION DEFINED.—Taking by right of representation occurs when the descendants of a deceased heir take together the same share of the estate of another person that their parents would have taken if living.

APPEAL from a decree of distribution of the Superior Court of the City and County of San Francisco.   Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

W. H. Morrissey, Charles S. Wheeler, and John F. Bowie, for Appellant.

John J. O'Toole, Cullinan & Hickey, and J. E. Derham, for Respondents.

SHAW, J.—By his last will James Healy bequeathed the residue of his personal property to certain grandnephews and grandnieces by right of representation.   The decision in the case requires a determination of the meaning of the phrase "by right of representation" as applied to this bequest. James Healy left no descendants.   He had two sisters, Mary Healy, who married a man named Lanning, and Bridget

Healy, who married a man named Burke. Mary had three sons, namely, George, Joseph, and Henry Lanning. Joseph had two daughters, namely, Milly and Annie Lanning, Henry had one daughter, Nellie Lanning. Bridget had a son, Patrick Burke, who had a son, William Burke. The two nephews, Joseph and Henry Lanning, the nephew Patrick Burke, and the two sisters of James Healy, had all died before the execution of the will. The persons named as residuary legatees were the said Milly and Annie Lanning, the said Nellie Lanning, and the said William Burke. The question is whether these persons are to be taken as representing their parents, respectively, who were nephews of the testator, or as representing, respectively, the sisters of the testator, Mary and Bridget.

The following are the provisions of the will in controversy. We give them with the paragraphing as they appear in the will itself.

"Fifth: I give and bequeath all other personal property of whatsoever nature or description or wheresoever situated, of which I may die possessed, unto the following grandnephews and grandnieces by right of representation:

"Milly and Annie Lanning, residents of Montreal, Canada, being the children of a nephew whose name I do not now recall, but which said nephew is a son of my sister Mary Healy;

"Nellie Lanning, of Montreal, Canada, daughter of a nephew whose name I do not now recall, but which said nephew is a son of my sister Mary Healy. Said Nellie Lanning was for some time connected with the office of the 'True Witness' as proofreader;

"William Burke of New York City, son of my nephew Patrick Burke, which nephew is a son of my sister Bridget Healy."

The respondents contend that the intent of the testator, manifested by the fifth clause of the will, was to give one-third of the residue to Milly and Annie Lanning, one-third to Nellie Lanning, and one-third to William Burke. Their theory is that the phrase "by right of representation," in the opening paragraph, refers exclusively to the three nephews described in the last three paragraphs, and that its only effect is to limit the shares of Milly and Annie, as representatives of their unnamed father, to one-sixth of the estate each, instead of the

one-fourth each that would have been theirs if the residue left to the four persons named had been given to them as a class, without the qualifying phrase. The court below took this view and distributed the residue accordingly. Bridget Rhead, who is the owner by assignment of the share of William Burke, appeals from the decree of distribution.

For the appellant it is contended that the phrase "by right of representation," in the opening paragraph, refers primarily to the two deceased sisters of the decedent, subsequently named; that it is their grandchildren who are to take the residue as their representatives, respectively, the result being that one-half will go to the assignee of William Burke as the representative of his grandmother, Bridget Healy Burke, and the other half to Milly, Annie, and Nellie Lanning, as the representatives of their grandmother, Mary Healy Lanning.

We do not perceive any strong reasons for selecting the nephews as the stocks to which said introductory qualifying phrase refers, which do not point with equal or greater force to the selection of the sisters as the point of beginning of lineage intended. The phrase is in the introductory sentence of the fifth clause. By implication and grammatical construction it is to be taken as a qualification of all that follows, relating to the subject, to which the phrase would naturally apply. The natural meaning, therefore, would be that wherever the relationship of the legatees is such that the rule of descent by right of representation would apply, and nothing appears to indicate a contrary intent, the parties are to take "by right of representation" and not *per capita;* or, in other words, that the principle of taking by representation should apply to the dispositions made, in all cases to which it could apply.

Taking by right of representation occurs when the descendants of a deceased heir take together the same share of the estate of another person that their parents would have taken if living. (Civ. Code, sec. 1403.) We are to take the testator as conceiving that his two deceased sisters should be the original stocks of descent, arbitrarily naming certain of their descendants to represent them as descendants in his testamentary scheme, and then declaring that the principle of representation should apply to the entire scheme. Giving the phrase this meaning and application, the result would be

that the residue would first be divided into two parts, one for the persons named who were descendants of the sister Mary Healy Lanning, the other for those named who were descendants of the sister Bridget Healy Burke. This would give William Burke, as the sole representative of the testator's sister Bridget, one-half of the residue, and to the three descendants of the other sister Mary, the other half thereof.

In disposing of the share appointed to the descendants of Mary, the principle of representation would again apply. By descent from Mary, her sons Joseph and Henry, if living, would each take a share. The two daughters of Joseph, namely, Milly and Annie, would represent him, and by that rule they would take, together, the share of their father as the descendant of Mary, that is, one-fourth of the residue, or one-eighth thereof to each of them, the other one-fourth going to Nellie Lanning as the only named representative of her father, Henry Lanning. This appears to us to be the most reasonable and natural interpretation of the will, and the one which best accords with the literal meaning and grammatical construction of the language.

The only circumstance that can be considered as indicating an opposite interpretation is the fact that in naming and describing the legatees the paragraph form of composition is used, and a separate paragraph is devoted to the children of each deceased nephew. This, at best, is of very slight importance as a key to the meaning, and its force is much weakened by the fact that he did not remember the names of two of the nephews, showing that his mind was not dwelling strongly upon them, and that, in each case, he did expressly mention a sister as the parent, and apparently without any necessity of doing so except to point to them as the parent stocks. The paragraphing alone is insufficient to overcome the natural meaning of the words.

Counsel for respondents rely on the decisions in *Robinson* v. *Shepherd,* 4 De Gex, J. & S. 129, 46 Eng. Rep. 865, *Parker* v. *Winder,* L. R. [1883] 24 Ch. Div. 664, and *In re Dering* (Weekly Notes, 1911, p. 187), as precedents in their favor. In *Rosenberg* v. *Frank,* 58 Cal., at page 411, decided in 1881, this court quoted and approved the following from the decision of the United States supreme court in *Lambert's Lessee* v. *Paine,* 3 Cranch (7 U. S.), 130, [2 L. Ed. 377], decided in 1803: "Except for the establishment of general principles,

very little aid can be procured from adjudged cases in the construction of wills. It seldom happens that two cases can be found precisely alike." The experience of the present members of this court confirms this declaration. In the cases referred to by counsel for respondents, the language was different from that of the present will, and the reasoning of those cases has little, if any, application to the ·present case. The cases of *Gibson* v. *Fisher*, L. R. 5 Eq. Cas. 51, decided by Lord Romilly, Master of the Rolls, and *Siders* v. *Siders*, 169 Mass. 523, [48 N. E. 277], are more nearly like the case at bar, and are to that extent precedents in favor of our conclusion. It follows that the court below erred in the decree of distribution appealed from.

The decree of distribution is reversed and the cause remanded, with directions to the court below to enter an order distributing the residue of the estate in accordance with the views expressed in this opinion.

Sloss, J., and Lawlor, J., concurred.

· Hearing in Bank denied.