BAINBRIDGE, Executor, Plaintiff and Appellant, vs. BAIN-BRIDGE and others, Defendants and Appellants: GIL-BERTSON, Defendant and Respondent.

*February 8—March 7, 1939.*

For the appellants there were briefs by *J. D. Darrow* of Argyle, attorney for Thomas S. Bainbridge, and by *Arnold, Caskey & Robson* of Beloit, attorneys for Anna Bainbridge, Loretta Bainbridge, Bessie Wiseman, Archibald Bainbridge, and Mary L. Bainbridge, and oral argument by *W. H. Arnold.*

For the respondent there was a brief by *E. F. Conley* of Darlington, attorney, and *Kopp & Brunckhorst* of Platteville of counsel, and oral argument by *A. W. Kopp.*

FRITZ, J. The essential facts on this appeal may be summarized as follows. On April 1, 1908, Matthew Bainbridge owned a 436-acre farm, upon which he gave a mortgage to M. J. Cleary to secure his note for $12,000, payable in ten years at five and one-half per cent interest per annum. (That mortgage will hereinafter be called the "Cleary mortgage.") On April 2, 1908, Matthew Bainbridge conveyed the farm to his ten children (Joseph Bainbridge, Wilfred Bainbridge, J. Henry Bainbridge, Thomas S. Bainbridge, Archibald Bainbridge, Loretta Bainbridge, Anna Bainbridge, Bessie Bainbridge, Margaret E. Johns, and Lottie Robinson) as tenants in common by a warranty deed, under which they assumed and agreed to pay the $12,000 note secured by the mortgage, as a part of the purchase price of the farm. On April 4, 1908, Cleary assigned the note and mortgage to Matthew Bainbridge. On November 5, 1917, Margaret E. Johns conveyed her interest in the premises to her five brothers in varying proportions, and Joseph Bainbridge thereby acquired an additional 4/130ths interest in the farm, making his total undivided interest 17/130ths. On November 25, 1921, he borrowed $8,000 from his sister-in-law, Emma Gilbertson, and gave her his note, payable in three years with interest at seven per cent per annum, and secured by a mortgage on his undivided interest in the farm. Matthew Bainbridge died on January 29, 1922. He still owned the $12,000 note and

mortgage, and by his will, which was admitted to probate on March 7, 1922, and of which the plaintiff, Thomas S. Bainbridge, was appointed executor, he gave the residue of his property, which included that note and mortgage, to his ten children, share and share alike. On June 27, 1922, the plaintiff, as executor, filed an inventory, showing personal property, including the $12,000 note and mortgage, of $16,834.12, and real estate valued at $10,000. Interest, up to April 1, 1921, had been paid on the note, and it and the mortgage were appraised at $12,550. All claims against the estate were duly paid, but nothing was done by the plaintiff or his brothers or sisters to liquidate or discharge the $12,000 note, or to obtain the assignment of their respective interests therein as residuary legatees; and no final decree distributing the property and closing the estate has been entered. Nothing has been paid on the $12,000 note since the father's death, but at all times since then Thomas S. Bainbridge operated and had the use and income of the farm in common with some of his cotenants, and with the acquiescence, apparently, of all the residuary legatees. During that time he has rendered no accounting, as executor, of the income from the farm, and did not apply the proceeds thereof to the payment of the mortgage indebtedness.

On September 27, 1922, Joseph Bainbridge conveyed all of his interest in the farm to the plaintiff, Thomas S. Bainbridge, by a deed which recited that his interest was unincumbered, excepting by the lien of the mortgage which he had given to Emma Gilbertson to secure the $8,000 loaned from her. Since their father's death, Wilfred Bainbridge, J. Henry Bainbridge, and Lottie Bainbridge conveyed their interests in the farm to Thomas S. Bainbridge and the defendants excepting John Gilbertson, but in none of their deeds was it stated that the interest conveyed was subject to the Cleary mortgage. Likewise there is no mention of that mortgage in a deed by which Thomas S. Bainbridge, in Sep-

tember, 1929, conveyed his interest in the farm to the state banking commission, as receiver, to secure a certain loan. When this action was commenced, the title to the farm vested in unequal shares in Thomas S. Bainbridge, Anna Bainbridge, Loretta Bainbridge, Bessie Wiseman, and Archibald Bainbridge and his wife, subject to the Cleary mortgage on all interests therein; and in addition the undivided 17/130ths interest acquired by Thomas S. Bainbridge from Joseph Bainbridge was subject to the mortgage which he had given to Emma Gilbertson. That mortgage and the note secured thereby had become the property of the defendant John Gilbertson. Some interest was paid thereon up to 1930, but the principal and $4,447.37 for interest were owing when judgment was entered. From time to time the plaintiff discussed settlement of the Gilbertson mortgage with the owner thereof, but his offers were not accepted.

After the probate proceedings had been dormant for thirteen years, the plaintiff filed an account as executor covering the period from March 7, 1922, to May 22, 1935. The account stated that all claims had been paid in full, and listed as assets on hand the $12,000 note and mortgage, another note and mortgage, a trust certificate, and $212.01 in cash. In connection with transactions by which some of the cotenants conveyed their interests in the farm to the others, they also assigned to the plaintiff their interests in their father's estate, which would include their interests in the $12,000 mortgage. In November, 1937, the county court directed the plaintiff, as executor, to bring this action to foreclose the Cleary mortgage. Gilbertson by cross complaint sought the foreclosure of his mortgage, and to have the court, upon equitable grounds, declare it to be a prior lien to that of the Cleary mortgage given to secure the $12,000 note. In granting relief the court said:

". . . it clearly appears that his [Matthew Bainbridge] estate could have been closed and the residue, including said

mortgage, assigned to the residuary legatees; and, the residuary legatees and their assigns being the owners of the mortgaged real estate, the result would be that the assignment of the mortgage to them would operate to discharge it, as the lesser estate would be merged in the greater.

"The plaintiff has, since 1922, been the owner of the lands mortgaged by his brother Joseph, which mortgage is now owned by the defendant John Gilbertson, and the question is, should he be allowed to profit as a result of his delaying so long to properly perform his duties as executor and be permitted now to foreclose the $12,000 mortgage in a manner that will cut out entirely the mortgage lien of the defendant Gilbertson?

"I have given this matter full consideration and it seems clear to me that, under all the facts and circumstances shown, it is the duty of a court of equity to hold that as between the plaintiff and the defendant Gilbertson the lien of the mortgage held by the latter on the undivided interest in the lands owned by Joseph Bainbridge when he gave the mortgage, and now owned by the plaintiff, and being an undivided seventeen one hundred thirtieths (17/130ths) thereof, is now superior to the lien of the mortgage held by plaintiff as executor, and I do so find."

The court rightly concluded that the equities herein are such that the plaintiff should not be permitted now to foreclose the Cleary mortgage in a manner that will entirely defeat the lien of Gilbertson's mortgage on the 17/130ths interest owned by the plaintiff in his individual capacity, and thus be allowed to profit as a result of his long and inexcusable delay in properly performing his duties as executor. However, the lien of the Cleary mortgage on the 17/130ths interest in the farm cannot be subordinated to the lien of Gilbertson's mortgage on that interest on the court's theory that there was a merger of the lesser estate, which Matthew Bainbridge's children acquired, as residuary legatees, in the Cleary mortgage, and the greater estate which they had as owners of the fee title, and that that merger operated to discharge the lien of the Cleary mortgage. It is well established that

"to constitute a merger, it is necessary that the two estates be in one and the same person, at one and the same time, and in one and the same right." 10 R. C. L. p. 666, § 26; 21 C. J. p. 1033, § 233. In view of that rule there was no merger because the ownership of the greater estate in the fee and the ownership of the lesser estate by reason of the Cleary mortgage never vested at the same time in identical persons. When Margaret E. Johns became entitled to an interest in the Cleary mortgage as a residuary legatee, she no longer owned an interest in the fee. Likewise, until there was a distribution and assignment of interests in the Clearly mortgage to the residuary legatees in the settlement of the estate, the executor was the holder of that security, but he did not have title to the farm.

However, it was the duty of the plaintiff, as executor, to render a true and just account of his administration to the county court within one year (sec. 310.14, Stats.); and to liquidate and distribute the personal property of the estate within that year, unless the time was extended by an order entered under secs. 313.13 and 313.14, Stats., upon a showing of good and sufficient cause. *Coolidge v. Rueth,* 209 Wis. 458, 245 N. W. 186; *Will of Robinson,* 218 Wis. 596, 261 N. W. 725; *Estate of Onstad,* 224 Wis. 332, 271 N. W. 652. It does not appear that such an order was ever entered. Consequently, it was the plaintiff's duty as executor, within the period of one year, to liquidate the Cleary mortgage indebtedness by securing the voluntary payment thereof, or by compelling satisfaction thereof either by proceedings in a foreclosure action or by resorting, in the administration of the estate, to an executor's right to retain from a debtor of the estate a legacy to which he is entitled and apply it in discharge of his indebtedness. If the executor had promptly resorted to the latter method, the Cleary mortgage would have been fully satisfied within one year, and there would not have accumulated unpaid interest thereon for fifteen years

to the prejudice and impairment of Gilbertson's mortgage lien on the 17/130ths interest in the farm, which plaintiff owned in his individual capacity. There was testimony that even at the time of the trial in 1938 (the eighth year of the present financial depression) the farm appeared to be worth $40 per acre, or a total of $17,440. On the basis of that valuation, there would have remained in 1923 an equity of substantial value as security for Gilbertson's mortgage. Under the facts and circumstances, and particularly in view of the plaintiff's delay in liquidating the Cleary mortgage, and his failure, with the acquiescence of his cotenants and residuary legatees, to apply the income from the operation of the farm on the mortgage indebtedness, the equities in favor of Gilbertson render applicable and make it the duty of the court to apply equitable doctrines designed to prevent the inequitable and unconscionable consequences that would result if the lien under the Cleary mortgage were considered as still entitled to priority over the lien under Gilbertson's mortgage on the 17/130ths interest which plaintiff acquired in his individual capacity. In the exercise of that duty there is applicable the maxim, "Equity regards that as done which ought to have been done." *Estate of Richardson,* 223 Wis. 447, 459, 271 N. W. 56. Likewise, there is warranted the conclusion that the plaintiff having failed, as executor, to liquidate the Cleary mortgage indebtedness by promptly obtaining payment thereof or instituting foreclosure proceedings, ought, within the year allowed by statute for the settling of an estate, to have exercised the right of an executor to retain from a debtor to the estate a legacy to which he is entitled and apply it in discharge of his indebtedness. As was said in *Webb v. Fuller,* 85 Me. 443, 445, 22 L. R. A. 177:

"The right of an executor or administrator to retain a legacy or distributive share from a debtor to the estate and apply it to the indebtedness has long been recognized by the law as existing without any statute. It is not the technical

right of setoff in actions at law. It is rather called in the old cases the right of retainer. It is an equitable right of its own nature, and not at all dependent upon any statute. It is the plain, moral, as well as legal duty of the debtor to pay his debt to the estate. He has had the value from the estate. He ought in morals and law to restore it. It needs no statute to affirm this duty. It is self-evident."

In applying that doctrine, this court said in *Brunn v. Schuett,* 59 Wis. 260, 271, 18 N. W. 260:

"There can be no question but what the executor has the right to deduct, from the legacies to Caroline and Jacob, the amounts of the notes and mortgages against them, respectively. *Courtney v. Williams,* 3 Hare, 539; *Rose v. Gould,* 15 Beav. 189; *Rickets v. Livingston,* 2 Johns. 97; *Strong's Ex'r v. Bass,* 35 Pa. St. 333."

See also *Will of Weidig,* 207 Wis. 107, 240 N. W. 832; *Estate of Mohr,* 212 Wis. 198, 207, 248 N. W. 143, 249 N. W. 517; *Estate of Weiss,* 224 Wis. 192, 271 N. W. 918; *Gosnell v. Flack,* 76 Md. 423, 25 Atl. 411, 18 L. R. A. 158; *Oxsheer v. Nave,* 90 Tex. 568, 40 S. W. 7, 9, 37 L. R. A. 98; 3 Woerner, American Law of Administration (3d ed.), p. 1924, § 564.

At the time the executor should have liquidated the Cleary mortgage indebtedness, all of Matthew Bainbridge's children were liable therefor by reason of the covenant to that effect in the deed by which he conveyed the farm to them; and, on the other hand, all of them were entitled, as the residuary legatees, to share in the proceeds of that mortgage. Consequently the doctrine of equitable retainer was then clearly applicable; and the fact that it was not stated in any of the subsequent deeds conveying interests of some of the children to the present owners, or in the plaintiff's deed to the banking commission, that the conveyances were subject to the Cleary mortgage, warrants the conclusion that all of the children considered the obligation secured thereby as discharged by setting off their right to share therein as residuary legatees against liability therefor. That is in accord and consistent

with what could and should have been done, and with what equity will regard as done under the facts and circumstances proven herein; and by reason thereof the lien of the Cleary mortgage must be considered subordinated to the lien of the Gilbertson mortgage on the 17/130ths interest in the farm. It follows that, as between the appellants and Gilbertson, the latter was entitled to judgment declaring the lien of his mortgage on that interest paramount and superior to the lien of the Cleary mortgage.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I dissent from the method adopted by the court to protect the lien of the Gilbertson mortgage. In my opinion the court has unduly labored in its effort to bring about that result. The result had to be accomplished of course. But there was no need to go through the rigamarole of ordering sale on foreclosure of the $12,000 mortgage to effect it. The legacy of the note and mortgage to the ten children operated as payment or extinguishment of the note. *Heaton v. Merchant's Executors,* 35 N. J. Eq. 561; *Hobart v. Stone,* 10 Pick. (Mass.) 215; *Holmes v. Holmes,* 36 Vt. 525. Extinguishment of the note satisfied or canceled the mortgage. The trial court should have so adjudged and dismissed the complaint for foreclosure of the $12,000 mortgage and foreclosed the Gilbertson mortgage on the cross complaint therefor. The opinion of the court applies the maxim that equity treats as done what ought to have been done. The case of *Brunn v. Schuett,* 59 Wis. 260, 271, 18 N. W. 260, shows plainly what ought to have been done. The simple and direct way to apply the maxim would be to apply it as above suggested. As said in the *Brunn Case, supra,* there should not have been "any foreclosure of the note and mortgage." The judgment of the circuit court so far as it foreclosed the $12,000 mortgage should be reversed and dismissal ordered, just as was done in the *Brunn Case.*