A petition for a rehearing was denied November 27, 1945.

[Civ. No. 3401.   Fourth Dist.   Nov. 5, 1945.]

ALICE ROSS WOOD et al., Respondents, v. FIRST NATIONAL BANK IN SANTA ANA, as Executor, etc., Appellant.

George H. Gobar for Appellant.

Dorothy Thompson Lodge, R. C. Mize and S. M. Davis for Respondents.

BARNARD, P. J.—This is an action for declaratory relief, the purpose of which was to determine the rights of the parties in connection with the termination of a trust.

In 1926, Sydmer Ross and his wife Bertie Ross conveyed certain securities to the First National Bank in Santa Ana under a declaration of trust. The trust agreement provided that the trust should be irrevocable upon the death of either Mr. or Mrs. Ross; that the income should be paid to Mr. and Mrs. Ross and their unmarried daughter Sheila Ross, during their respective lives; and that the trust should terminate upon the death of all three beneficiaries. The last survivor of the beneficiaries was given the power to dispose of the corpus of the trust by will. It was then provided that, in the absence of such a disposition by the last survivor and if no lineal descendants of the trustors should then be living, the trustee should convey the corpus of the trust "in equal shares per *stirpes* and not per capita to such persons as shall then constitute the heirs at law of the Trustors according to the laws of the State of California." It is conceded that the securities thus conveyed to the trustee had been the community property of Mr. and Mrs. Ross, and both of them signed the trust agreement as trustors.

Mr. Ross died in 1934 and Mrs. Ross died in August, 1941. Sheila Ross died on December 31, 1941, without issue and without disposing of the trust estate by will. No lineal descendant of Mr. and Mrs. Ross, or either of them, was living at the time set for the termination of the trust.

It appears without question that at the time set for the termination of the trust the sole heir of Mrs. Ross was her sister, Laura N. Brown. Mr. Ross had had five brothers and sisters, all of whom died before the termination of the trust. At that time, Mr. Ross' heirs consisted of numerous descendants of his deceased brothers and sisters. Certain of his heirs brought this suit for the benefit of all of his heirs. Laura N. Brown died while the action was pending and the

First National Bank of Santa Ana was substituted as the executor of her will. The identity of the heirs of Sydmer Ross was determined in a proceeding in the Superior Court of Orange County and no question with respect thereto is here raised.

The controversy was between Mrs. Ross' sister, on the one hand, and the various descendants of Mr. Ross' five brothers and sisters on the other hand. The complaint was based on the contention that the parties to the trust agreement intended, by the language used and under the circumstances here appearing, that the corpus of the trust estate should be conveyed in six equal shares, one share to Mrs. Ross' sister and one share to the descendants of each of the five brothers and sisters of Mr. Ross. In the answer filed by the executor of the estate of Laura N. Brown, it was contended that since the property in the trust was the community property of the trustors and since Laura N. Brown was the sole heir of Mrs. Ross she was entitled to one-half of the corpus of the trust, and that the other half should go to the descendants of the deceased brothers and sisters of Mr. Ross.

The court found that the parties to the declaration of trust, by using the language therein contained, did not mean or intend that there should be constituted two groups of heirs representing the two trustors, respectively, but meant that all of the heirs of both trustors should constitute one group to share equally, the descendants of deceased heirs to take upon the principle of representation, and that in the contingency which now exists it was intended that the corpus of the trust should be divided into six equal shares, one share going to the estate of Laura N. Brown and one share to the descendants of each of the deceased brothers and sisters of Mr. Ross. Judgment was entered accordingly and the bank, as executor of the will of Laura N. Brown, has appealed.

Appellant's main contention is that the trial court's allowance to the estate of Laura N. Brown of one-sixth of the corpus of the trust is contrary to the laws of this state and that, under those laws, one-half of the corpus should have been awarded to the appellant and the other half to the heirs of Mr. Ross. It is argued that since the trust was created out of community property section 228 of the Probate Code applies and governs, and the property must go one-half to the family of Mr. Ross and one-half to the family of Mrs. Ross. It is further argued that the provision in the

trust agreement "in equal shares per *stirpes* and not per capita to such persons as shall then constitute the heirs at law of the Trustors according to the laws of the State of California" must be interpreted so as to give effect to section 228 of the Probate Code; that the words "by right of representation" in that statute mean the same as the words "per *stirpes*" in the trust agreement and should be substituted for those words; that when this substitution is made it clearly appears that the intention of the parties was that the property should go in equal shares "as a family," and not in equal shares among the individuals referred to; that there were two trustors and two families; that the words "in equal shares" in the trust agreement means one-half to each of the two families; and that the clause in question must be interpreted as providing that one-half of the corpus of the trust shall go, respectively, to the heir or heirs of each of the trustors.

As supporting its contention the appellant relies on *Estate of Watts*, 179 Cal. 20 [175 P. 415]; *Estate of Brady*, 171 Cal. 1 [151 P. 275]; *Estate of Bryant*, 3 Cal.2d 58 [43 P.2d 529], and other cases in which subdivision 8 of section 1386 of the Civil Code, the predecessor of section 228 of the Probate Code, is discussed, and the reasons given why the property acquired jointly by a decedent and his or her predeceased spouse should go to the two families rather than to the family of one alone, in the absence of lineal descendants, and where no other provision is made. *Dickey* v. *Walrond*, 200 Cal. 335 [253 P. 706], is also cited as holding that section 1386 of the Civil Code is the source in every case for a designation of the persons who meet the description of heirs and that, of necessity, this must also include the proportions in which they shall take.

In all of the cases cited, where no disposition of the property was made, other than to give it to the heirs of the party to be distributed according to law, section 228 of the Probate Code, or its predecessor subdivision 8 of section 1386 of the Civil Code, was held applicable. In *Dickey* v. *Walrond*, the court said: "We entertain no doubt that in a case where section 1334 legitimately applies, the section makes applicable section 1386, not only for the designation and description of the takers, but also for the purpose of fixing the proportions in which each shall take." Section 1334, as pointed out, related to "A testamentary disposition to 'heirs' . . . of any

person, without other words of qualification. . . ." The will in that case provided that in the event of the death of the testator's wife during the life of a testamentary trust certain property should go "to her heirs at law."

In the instant case we are concerned with the interpretation of language used in connection with a conveyance made long prior to the time the words in question were to take effect. While the property had been the community property of the trustors it was conveyed by them to the trustee and the conveyance became irrevocable upon the death of the first trustor in 1934. It is not a case where the property was not disposed of by will or otherwise, or where the general laws of succession should be applied. The property was disposed of under the conditions set forth in the trust agreement. The solution of the problem must depend upon the language there used, and the question here is as to whether the interpretation placed by the trial court upon that language is a reasonable one. It is not merely provided therein that the property is to go, at the termination of the trust, to such persons as are then heirs at law of the trustors, but it is further provided that it shall go to the members of that class in "equal shares per *stirpes* and not per capita."

The language thus used not only designates the persons who are to receive but attempts to fix the proportions in which they shall take. Any doubt as to the meaning intended arises from the fact that the phrases "in equal shares" and "per *stirpes* and not per capita" are both used. In a New Jersey case, *Camden Safe Deposit & Trust Co.* v. *MacMullan*, 112 N.J.Eq. 574 [165 A. 105], in considering a somewhat similar situation, the court pointed out that the use of both phrases was inexact and then said:

"The testator apparently intended to direct an equal division of his estate among his eight nieces because he named them without reference to the parent. It would seem that, if he had intended to divide them into classes, and give one-half of his estate to the three daughters of his sister Mrs. MacMullan, and the other one-half of his estate to the five daughters of his sister Mrs. Simpkins, he would have directed a division among the daughters of these two sisters 'per *stirpes* and not per capita,' omitting the phrase 'share and share alike.'"

It would seem here that if it had been intended to give half of the property to the heirs of Mr. Ross and half to

the heirs of Mrs. Ross the heirs of both would not have been treated together as one class, and it would not have been provided that all members of this class should take ''in equal shares'' when it was apparent that the heirs of Mr. Ross were and were likely to be much more numerous than those of Mrs. Ross. It rather clearly appears from the language used that the trustors did not intend to constitute two groups of heirs, his and hers, and to divide the property between these two groups, but that they intended to include the heirs of both in one group and to provide for some sort of an equal division within that group.

The words ''per *stirpes*'' denotes a taking by right of representation of that which an ancestor of the party or parties would take if living. As used here these words must refer to those descended from someone who, if living, would have been an heir of one of the trustors. Primarily, the reference must be to the sister of Mrs. Ross and the brothers and sisters of Mr. Ross, who would, if living, have been the heirs. It must have been intended that their children or descendants, respectively, should take what otherwise would have been their share.

The intention seems to have been, while giving the property to the heirs of both trustors as one class, to consider the brothers and sisters of both as the original primary heirs and to provide that the property should go in equal shares to their respective sets of descendants by right of representation. Under any other interpretation one or both of the phrases used would be meaningless. The court thus construed the language used and it cannot be held that this interpretation is an unreasonable one.

It seems apparent that whatever was meant by the words ''per *stirpes* and not per capita'' it was not meant to divide the property equally between the relatives of Mr. Ross on the one hand and those of Mrs. Ross on the other. Under any other interpretation than that adopted by the trial court those words would have to be disregarded as the persons then constituting the heirs of both trustors would take in their own right as heirs, and not by right of representation. In that event, the numerous descendants of the brothers and sisters of Mr. Ross and the sister of Mrs. Ross, her one heir, would each share equally in the property and the estate of Laura N. Brown would take a share much smaller than the one-sixth awarded it. The heirs of Mr. Ross, who were quite

550

numerous, have not appealed and are not here complaining of the division as made by the court.

It follows that section 228 of the Probate Code has no application here and that the court's interpretation of the language used must be sustained.

■ The only other point raised by the appellant is that the court erred in admitting into evidence a copy of a will executed by Mr. Ross on the day following the execution of the trust agreement, but which was presumptively revoked as it was not found after his death, and a copy of a will of Mrs. Ross, executed two days after the execution of the trust agreement and which will she later revoked. These wills were admitted for the sole purpose of showing an intention on the part of these parties, about the time the trust agreement was executed, to dispose of all other property owned by them in the same way as that provided for in the trust agreement, as interpreted by the court. It is argued that these wills, which the attorney was required to produce, were privileged communications since they had been revoked. It is unnecessary to decide the question thus raised as the court's interpretation of the trust agreement is fully sustained by the instrument itself, and any possible error in this regard could not be regarded as sufficiently prejudicial to justify a reversal.

The judgment appealed from is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1946.