[Civ. No. 25178.   Second Dist., Div. Three.   Oct. 13, 1961.]

Estate of SAMUEL BERK, Deceased. HERBERT L. FREED, as Administrator, etc., Appellant, v. DAVID J. BERKOWITZ, Respondent.

Edward B. Freed for Appellant.

Voorhees, Stewart & Voorhees and Malcolm E. Stewart for Respondent.

VALLÉE, J.—Appeal by the administrator from parts of an order denominated "Order Settling and Approving Alleged First and Final Account as an account current Without Right of Set-Off Against Heir . . . and for Preliminary Distribution." The appeal is also from the findings made in support of the order. An appeal does not lie from the findings and that appeal will be dismissed. The cause is here on an agreed statement of facts.

The question is: May the amount of an indebtedness owing to a decedent be retained by his personal representative from a distributive share of his estate inherited by a descendant of the debtor?

Samuel Berk (formerly known as Sholom or Samuel Berkowitz) died intestate on January 7, 1958, a resident of the county of Los Angeles. He left surviving as his heirs at law: Clara Solomon, a sister; Ray Freed, daughter of Rose Goldberg, a predeceased sister; and David J. Berkowitz, son of Daniel S. Berkowitz, a predeceased brother.

On October 11, 1954, the deceased loaned $5,200 to his brother Daniel. Daniel executed his promissory note for that amount to the deceased, payable one day after date with 6 per cent interest. Daniel, a resident of Pennsylvania, died there in November 1954 without having paid any part of the note. His estate was administered in Pennsylvania. About December 1954 the deceased presented a claim to the administrator of Daniel's estate. The claim was approved. Daniel's estate was insolvent. However, Samuel received $295 in December 1955 as payment on the note. No further sum was paid. Daniel left no assets in California. His estate was closed before Samuel's death.

The administrator of decedent's estate inventoried the note as an asset and it was appraised at $4,905. In his first and final account he averred that since David takes by way of representation, the estate has a right of setoff against the amount distributable to David in the amount of the note together with accumulated interest. He prayed: ''That the Court make a decree for the distribution of this estate to the persons entitled thereto, and in the following proportions: a. Ray G. Freed One-third thereof b. Clara Solomon One-third thereof c. David J. Berkowitz One-third thereof. . . . [T]hat the distribution to David J. Berkowitz be so made as to consist of the canceled note receivable of D. Berkowitz in the sum of $4,905.00 plus accumulated interest from the date of said note, October 11, 1954, to the date of distribution herein, at the rate of 6% per annum,'' with deduction of amounts assigned. David had not endorsed, guaranteed, or in any way acknowledged the note as his obligation.

The court decreed the administrator of Samuel's estate does not have the right to and shall not off-set any part of the principal or interest claimed due on Daniel's note against the distributive share of David, and distributed the available cash one-third to Clara Solomon, one-third to Ray Freed, and one-third to David and his assignees. The administrator of Samuel's estate appeals.

Appellant's point is that if Daniel had survived Samuel, his debt to Samuel would have been deducted from the share

of the estate he would have received as an heir; that David takes by right of representation, i.e., represents his father, Daniel; therefore David takes the same share of the estate Daniel would have taken, i.e., one-third, less Daniel's debt to Samuel.

"Right of retainer" is the right of an executor or administrator to retain the amount of a debt owing the deceased by a legatee or heir from his legacy or distributive share and apply it to the indebtedness. (*Bainbridge* v. *Bainbridge,* 230 Wis. 610 [284 N.W. 536, 540].) The right is sometimes referred to as the right of setoff.

It is the general rule that the amount of an indebtedness of an heir or distributee to the estate may be deducted from his share. (26A C.J.S. § 71, p. 686.) Despite some uncertainty in the decisions, California appears to apply the doctrine of the right of retainer in the ordinary case of debts of money owed where there existed a relation of creditor and debtor between the deceased and the distributee. (*Estate of Thomas,* 140 Cal. 397, 398 [73 P. 1059]; *Estate of Gamble,* 166 Cal. 253, 256-257 [135 P. 970]; 21 Cal.Jur.2d § 828, p. 223; 4 Witkin, Summary of California Law, § 293, p. 3281.)

Probate Code, section 225, reads: "If the decedent leaves neither issue nor spouse, the estate goes to his parents in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to his brothers and sisters and to the descendants of deceased brothers and sisters by right of representation."

Section 250 reads: "Inheritance or succession 'by right of representation' takes place when the descendants of a deceased person takes the same share or right in the estate of another that such deceased person would have taken as an heir if living. . . ."

Taking by right of representation, as used in Probate Code, sections 225 and 250, means taking *per stirpes.* (*Maud* v. *Catherwood,* 67 Cal.App.2d 636, 644 [155 P.2d 111]; *Wood* v. *First Nat. Bank,* 71 Cal.App.2d 544, 549 [162 P.2d 859]; 26A C.J.S. § 23, p. 564.) Taking *per stirpes* denotes that the descendants of a deceased person together take the share which the deceased person would have taken. Among themselves, they take per capita. (3 Page on Wills, Lifetime ed., § 1070, p. 267.) "The law divides the property into as many equal shares as there are children and as there are deceased children with surviving descendants. Each child takes per capita, as it

is said, one share. The descendants of each deceased child take per stirpes or by representation, as it is said, and divide among them one share." (16 Am.Jur. § 38, p. 806; 26A C.J.S. § 23, p. 566; *Estate of Jepson,* 174 Cal. 684, 687 [164 P. 1].) *Estate of Healy,* 176 Cal. 244, 246 [168 P. 124], defines "by right of representation" as that which "occurs when the descendants of a deceased heir take together the same share of the estate of another person that their parents would have taken if living. (Civ. Code, § 1403.)" Civil Code, section 1403, was the basis of Probate Code, section 250.

Referring to former Civil Code, section 1386, which contained the rules of succession (now Prob. Code, §§ 220-229, 231), the court in *Dickey* v. *Walrond,* 200 Cal. 335 [253 P. 706], said the statute designated not only the takers of the decedent's property but the proportions they take. When there is only one descendant of the deceased person he takes the entire share the deceased person would have taken. The "share" mentioned in the statute refers to the quantum of the estate the descendants of a deceased person take.

Our statute casts the inheritance directly on the heir. The heir's title to inherited property vests automatically on the intestate's death. (Prob. Code, § 300.) "The estate vests in the heir *eo instanti* upon the death of the ancestor; and no act of his is required to perfect title. The estate is cast on the heir by operation of law without regard to his wishes or election. No assent or acceptance is necessary. He cannot, by any act, cause the estate to remain in the ancestor, for the latter is incapable of holding it after his death." (*Estate of Meyer,* 107 Cal.App.2d 799, 810 [238 P.2d 587].) ▮▮▮ A person taking *per stirpes* takes directly from the intestate and not from or through his parent who predeceased the intestate and had no title to transmit on his death. (26A C.J.S. § 23, p. 565.)

The question whether the indebtedness owing to the deceased by a predeceased immediate ancestor may be deducted in determining the amount which the distributee is entitled to take in the remote ancestor's estate seems to be one of first impression in this state. The cases in other jurisdictions which have passed on the question are in conflict, the weight of authority being that such deduction cannot be made. (1 A.L.R. 991, 1037.) The author of an annotation in American Law Reports says:

"These divers views are the result of the difference in opinion as to whether statutes providing for succession in the

case of the death of an immediate ancestor cast the inheritance directly upon the heir, or whether the heir, taking in the place of his ancestor, inherits simply as his representative, and therefore takes only what such ancestor would have taken had he survived the decedent. It may be pointed out that it is not conclusive of this question that the statute may provide that, in the distribution of the intestate's estate, the heir shall take by representation, since such expression may be taken merely to denote the fractional part to be taken, and not the ultimate share." (1 A.L.R. 1037; 30 A.L.R. 781; 75 A.L.R. 888, 110 A.L.R. 1389; 164 A.L.R. 747.)

The reasoning of the cases holding that the indebtedness to the deceased by a predeceased immediate ancestor may not be deducted in determining the amount which the distributee is entitled to take in the deceased's estate is that since the immediate ancestor died first, he never had any interest in the estate of the deceased; if it were held to the contrary it would logically follow that his share in the estate would be subject to the debts due from his immediate ancestor to the latter's general creditors; the distributive share of the distributee is in no way affected by the debt; and the statutes of succession define the quantum of the estate the distributee will take from the deceased.

*Johnson* v. *Huntley,* 39 Wn.2d 499 [236 P.2d 776], is on all fours with the case at bar. The statutes of the state of Washington with respect to inheritance by right of representation are substantially the same as those of California. Section 1355 of Remington's Revised Statutes of Washington is practically identical with Probate Code, section 250. The facts as stated by the court in *Johnson* v. *Huntley* were (236 P.2d 776):

"Charles and Ernest Carlson were brothers. In 1908 and 1909, Ernest loaned Charles money. Charles gave him his promissory notes. These notes have never been paid. About 1933, Charles died insolvent. Three children survived him. October 27, 1949, Ernest died intestate. His heirs were a brother and sister, Hjalmar and Hulda, and the three children of Charles. Under our statute of descent and distribution, Hjalmar and Hulda are each entitled to one-third of Ernest's estate, and the niece and nephews the remaining one-third."

We quote at length from that opinion (p. 777): "The question to be decided is whether the right of retainer, which it is conceded, would have been available to the administratrix

against the distributive share of Charles had he been living, can be asserted against his children.

"The earliest reported case involving the right of retainer is *Jeffs* v. *Wood*, 2 P. Wms. 128, 24 Eng. Rep. 668 (1723). The early rationale of the doctrine was the avoidance of multiplicity of suits. Later, emphasis was placed upon the 'plain moral and legal duty of the debtor to pay his debt to the estate,' and the hypothesis developed that there is no equitable right to participate in the distribution of the estate until the debtor's obligation to it is discharged. It is based upon the theory that the *debtor* has already received value from the estate. *Webb* v. *Fuller*, 85 Me. 443 [27 A. 346, 22 L.R.A. 177]. However, the right of retainer can only be applied *where the same person is entitled to receive the legacy and is liable to pay the debt.* The cross-demands must be payable *in the same right.* *McLaughlin* v. *Barnes*, 12 Wash. 373 [41 P. 62]. The true basis of the right of retainer is the possession by distributee of a portion of the decedent's estate. *Turner* v. *Turner*, 1 Ch. 716 [21 Ann.Cas. 810]. This, the niece and nephews never had. . . .

"In each case in which we have sanctioned the right of retainer, there has existed a personal relationship of creditor and debtor between the estate and the distributee. In each case the debtor had already received value from the estate of the decedent and had an 'obligation to contribute to the fund.' In the instant case, however, no portion of decedent's estate had ever been in the hands of the distributees against whom the right of retainer is claimed. They did not inherit their father's debts. They owed no obligation to the estate of their uncle, a portion of which had been *cast* upon them by operation of law. Hence, as in *Re Braden's Estate, supra* [122 Wash. 669 (211 P. 743)], there is no basis for the application of the doctrine of retainer.

"We recognize that the authorities are in conflict upon the question here involved. Some courts recognize the right of the personal representative of the decedent to retain a debt from the distributive share of descendants of the debtor, and some do not. These divers views are the result of the difference in opinion as to whether statutes providing for succession in the case of the death of an immediate ancestor cast the inheritance directly upon the heir, or whether the heir, taking in the place of his ancestor, inherits simply as his representative, and therefore takes only what such ancestor would have taken had he survived the decedent. . . .

"[P. 778.] The right of the niece and nephews to inherit from the estate of their uncle, Ernest Carlson, is based upon Laws of 1927, chapter 160, § 1, subd. 3, p. 150, Rem. Rev. Stat. § 1341, subd. 3, which provides: 'If there be no issue, nor husband, nor wife, nor father and mother, nor either, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, *by right of representation.*' (Italics ours.)

" 'Right of representation' is defined in Rem. Rev. Stat. § 1355, as follows: 'Inheritance or succession by right of representation takes place when the descendants of any deceased heir take the same share or right in the estate of another that their parents would have taken if living. . . .'

"[I]f an heir of that [the same] degree is deceased leaving children, the children then take by *right of representation.* The term, *equal shares,* is used in the statute instead of *per capita.* In the law of descent and distribution, 'taking by representation' means taking '*per stirpes.*' *Housley* v. *Laster,* 176 Tenn. 174 [140 S.W.2d 136]; Bouvier's Law Dictionary (8th ed.) 2558. It is clear that, in our statutes, the term *right of representation* is used instead of the Latin phrase *per stirpes.*

" '*Per capita*' means by the head as individuals, while '*per stirpes*' means by or according to stock or root; by representation. The term '*per stirpes*' denotes the *mode* of the descent and distribution of the intestate's estate where parties entitled take the share which their stock, if living, would have taken. *Buxton* v. *Noble,* 146 Kan. 671 [73 P.2d 43]; *Central Hanover Bank & Trust Co.* v. *Helme,* 121 N.J.Eq. 406 [190 A. 53]. The term does not refer to substitution parties or property, but merely describes how distributees are to take, and denotes the mode of the division of the property which the law of descent and distribution *casts* upon them.

"The words *right of representation* in subdivision 3 of Rem. Rev. Stat. § 1341, refer only to the fractional portion of the estate inherited. Rem. Rev. Stat. § 1355, does no more than define the *quantum* of the estate inherited by each representative within the class. It contemplates a blood relationship and designates that the property goes to the nearest stock. If the relationship of debtor and creditor exists between the estate and the 'nearest stock,' the right of retainer may be exercised; if that relationship does not exist, the doctrine of retainer does not apply.

"This conclusion is well supported by *Succession of the Misses Morgan,* 23 La. Ann. 290: 'Representation is a fiction of law, the effect of which is to put the representatives in the place, degree and rights of the person represented . . . . A dead man can neither get nor give; he can neither inherit nor transmit. The representative of the deceased person does not receive by transmission from that person and *jure alieno*; he receives by designation of law and *jure suo*. It follows therefore that the representative is not by the fact of representation merely rendered personally liable for the debts of the person whom he represents. He is endowed by the law with the rights of the latter in a certain succession, but is not laden with the obligations of that latter to the rest of the world. *He is not an accepting heir, but a designated representative . . . .*' (Italics ours.) and *Ellis* v. *Dumond,* 259 Ill. 483 [102 N.E. 801, 803] : '. . . The children of Henry P. Dumond are not personally liable for his debts or for any judgment which was secured against his estate. Not being liable for the debts of their father, we know of no theory upon which their interest in these lands can be subjected to the payment of the balance due on this claim.'

"and a case which follows it, *Russell* v. *Bulliner,* 370 Ill. 260 [18 N.E.2d 879, 880] : ' . . . the Descent Act defines the *quantum* of the estate that the grandchildren will take from their grandfather. If the appellee's contention were sustained it would follow, logically, that their share in the estate would be subject to the debts due from their immediate ancestor to his general creditors. In *Ellis* v. *Dumond, supra,* we pointed out that the immediate ancestor never owned the land but that the title passed by descent from the grandfather to the grandchildren. In the case before us Frederick L. Bulliner died first and never had any interest in the estate of his father. The distributive share of John L. Bulliner's minor grandchildren was in no way affected by the debt due . . . .'

"We think that the manifest meaning of the code sections, as quoted, is that the children of a predeceased brother 'represent and stand in the place of their deceased parent' in the sense that they together take, *per stirpes,* from their uncle, one share of the estate. *Harrison* v. *Barber,* 200 Ga. 225 [36 S.E.2d 662].

"We hold that our statute casts the inheritance directly upon the heir, free of any claim there may be against his immediate ancestor; that the administratrix may not retain

the amount of Charles' debt to Ernest as against the distributive share of Ernest's niece and nephews.''

We think the reasoning of the Supreme Court of Washington is compelling and is the proper construction of our statutes.

The great weight of authority is to the effect that the amount of an indebtedness owing to a decedent cannot be retained by his personal representative from a distributive share of his estate inherited by a descendant of the debtor. As we have no statute on the subject, we are of the opinion we should follow the rule which has met with almost the unanimous approval of the highest courts of other jurisdictions. In doing so we are not accepting the rule simply because it has been sanctioned by the greater number of courts, but also for the reason it appeals to us to be more just and equitable than the contrary rule.

The sole purpose of the statute is to declare under what circumstances the heirs should take per capita and under what circumstances they should take *per stirpes*. There is nothing in the language used to indicate a purpose that when they take *per stirpes* they should be subject to liabilities of their ancestors. One of the principles on which it has been held that when a distributee owes the estate he can only receive the balance of his distributive share in that the debt is part of the estate of the deceased. Having that part in his hands the distributee has that much of the estate, and can therefore collect only the balance, if any, of his share. David, not being liable for his father's debt, cannot be said to have any part of his uncle's estate in his hands. He therefore does not come under the principle.

There is no connection or correlation between David's inheritance and the debt. A dead man can neither get nor give; he can neither inherit nor transmit. The distributee by right of representation does not receive by transmission from his immediate ancestor. It follows that the representative is not by the mere fact of representation rendered personally liable for the debts of the person he represents. The statute gives him the share of the latter but does not burden him with the obligations of the latter. While David inherited the share of the estate his father would have taken had he been living, still he inherits not from his father but directly from Samuel. The estate he inherited from Samuel vested in him on Samuel's death and was no more subject to, nor liable for, the debts of his father than it would have been had he acquired it by pur-

chase or under a devise from a stranger. (*Barnum* v. *Barnum,* 119 Mo. 63, 67 [24 S.W. 780].) Daniel, if living, would have the right to inherit an equal share of the estate with the sisters of himself and Samuel—or one-third of Samuel's estate. If Daniel were living, the estate would have a right to collect $4,905 from Daniel. But the rule is not applicable to the facts at bar. Since Daniel is deceased, David has the right to inherit Daniel's share—or one-third of the estate. David owes no debt to the estate. The estate has no claim or right against him. Thus, there is no cross-demand to reduce the share he inherits. David does not take as an assignee from Daniel. A debt which is barred by the statute of limitations may not be retained from the distributive share of the debtor. (*Estate of Schaeffer,* 53 Cal.App. 493, 494-496 [200 P. 508]; *Estate of Clifford,* 16 Cal.App.2d 123, 125-126 [60 P.2d 302].) Such being the case, we can see no just reason why the son should pay the debt of the father. (*Ellis* v. *Dumond,* 259 Ill. 483 [102 N.E. 801].)

*Estate of Clary,* 203 Cal. 335 [264 P. 242], cited by appellant, is not analogous. The only question involved in Clary was whether the executor's debt to the deceased could be offset against his commissions and, if so, whether the debt was barred by the statute of limitations.

The argument that the note should have been distributed to David and that because it was not the administrator has an asset that he cannot distribute is unsound. The note is uncollectible and worthless. To distribute the note to David would be nothing more than retaining the amount of it from his share of the estate. If the worthless note should be distributed, it should go to the three heirs, one-third to each. Furthermore, the agreed statement of facts says that "the sole issue on this appeal shall be: Does said administrator have the right to set-off in his final account and petition for distribution the unpaid balance of $4,905.00 on said note, together with interest and reasonable attorney's fees, against the share of decedent's estate which said DAVID J. BERKOWITZ claims, his father, DANIEL S. BERKOWITZ, having predeceased the decedent."

It is in vain to argue against the fairness of the rule, or to contend that in a case like the one at bar Clara Solomon and Ray Freed ought not to be charged with any part of the debt of Daniel, David's father. Succession to estates is purely a matter of statutory regulation, which cannot be changed by the courts. The rules governing the law of succession are

technical and more or less arbitrary, and the underlying legislative policy is to a certain extent based on a choice to be made between two or more reasonably possible approaches. (16 Cal.Jur.2d § 28, p. 56.)

The appeal from the findings is dismissed. The parts of the order appealed from are affirmed.

Shinn, P. J., and Ford, J., concurred.