[No. B028713. Second Dist., Div. Six. Aug. 23, 1988.]

Estate of ANNA EDWARDS, Deceased.
SECURITY PACIFIC NATIONAL BANK, Plaintiff and Respondent,
v.
DAVID E. AGNEW et al., Defendants and Appellants.
PATRICIA R. FOUBERT et al., Defendants and Respondents.

1368

COUNSEL

Hufstedler, Miller, Carlson & Beardsley, James R. McDaniel, Adrienne Larkin Cook, Berryhill, Edwards & Miller and Colleen Parent Beall, for Defendants and Appellants.

Wilson, Borror, Dunn & Scott, James R. Dunn and Robert L. Bletcher for Defendants and Respondents.

No appearance for Plaintiff and Respondent.

OPINION

**STONE (S. J.), P. J.**—The subject of this appeal is the interpretation of a provision in a will disposing of the principal of a residuary trust. We conclude that the trial court's interpretation of this provision is erroneous, and reverse.

*Background*

Anna Edwards (Anna) died in 1931; she left no spouse or children, and had three brothers.

In a will executed in 1930, she created a residuary trust which reads as follows in pertinent part: "EIGHTH: All the rest, residue, and remainder of

my property, real, personal, and mixed, and wheresoever the same may be situate [*sic*] or being, I give, devise and bequeath to Security-First National Bank of Los Angeles, a corporation, in trust nevertheless for the following uses and purposes: To collect, hold, manage, sell, lease, control and possess, invest and re-invest the same, and pay the net income therefrom to the following persons and in proportions as follows: . . . [¶] One-seventh thereof to my niece, Abby Edwards Randall; [¶] One-seventh thereof to my niece, Dorothy Edwards; [¶] One-seventh thereof to my niece, Margaret E. Agnew; [¶] One-seventh thereof to my niece, Miriam B. Edwards; [¶] One-seventh thereof to my grand-niece, Patricia A. Ryon; [¶] One-seventh thereof to my grand-niece, Anna Berningham Edwards; [¶] One-seventh thereof to my grand-nieces, children of my nephew, Alfred R. Edwards, surviving at the time of my death. [¶] Should either of my said nieces or grand-nieces die leaving lawful issue her surviving, then the share of the income of the one so dying shall go to such issue; however, should either of my said nieces or grand-nieces die leaving no lawful issue her surviving, then the share of the income of the one so dying shall go to the survivor or survivors of my said nieces and grand-nieces. *Upon the death of the last of my four nieces in this Paragraph 8 above-named, this trust shall cease and terminate, provided my said grand-nieces shall have attained the age of fifty years (or shall have died) and the property so held in my trust by my said trustee shall go to and vest per stirpes in my said grand-nieces and in the lawful issue of my said four nieces and in the lawful issue of any of my grand-nieces who may have died prior to the termination of this trust*; and should all my said nieces and grand-nieces die without lawful issue her or them surviving, then the property so held in trust shall go to and vest in my said nephews, Archie M. Edwards and John S. Edwards, . . .'' (Italics added.)

According to its terms, the aforementioned trust terminated in 1986, after the four nieces named in the trust income provisions died[1] and all the grandnieces designated in the trust income provisions reached the age of fifty.[2] All of these grandnieces are alive today. Two of the named nieces died without issue. One of the remaining named nieces had one daughter, a fifth grandniece, who is alive today. The other remaining named niece had four sons, of which two are deceased. Anna had a total of nine grandnieces and grandnephews, the five issue of the named nieces and the four income beneficiary grandnieces.

No party disputes that the trust terminated in 1986, or that the will expressly provides for a stirpital distribution of the trust proceeds. The sole

[1] Anna had a total of five nieces and two nephews.

[2] Anna's nephew Alfred Edwards had two daughters, bringing the total designated grandnieces under the income provisions to four persons. Under the will, none of the designated grandnieces' parents were trust income beneficiaries.

question presented is what constitutes the "stirpes" or family roots for purposes of dividing the principal.

The trial court found that Anna's division of the trust's income into seven shares "along ancestral lines" and the interrelationship of the income distribution and principal distribution provisions indicated her intent that the trust's principal be divided per stirpes into seven shares, representing Anna's seven nieces and nephews, and each share then to be divided among the issue of each niece and nephew by right of representation. The court noted in its judgment that only five out of the seven nieces and nephews had issue. In its memorandum of intended decision, it called this plan for distribution "the five share option," apparently signifying the trust proceeds should be divided into five parts, representing the niece/nephew "ancestral lines" or family roots dying with issue.

## Discussion

■ The reviewing court has the duty to independently interpret the will when, as here, the credibility of extrinsic evidence or the resolution of a conflict in the evidence are not issues for consideration. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Estate of Elkeles* (1979) 90 Cal.App.3d 374, 377 [153 Cal.Rptr. 377].) In independently construing the document, the appellate court is not to engage in any presumptions favoring the correctness of the trial court's judgment. (*Estate of Hampton* (1958) 165 Cal.App.2d 255, 259 [331 P.2d 778].)

■ The cardinal rule in the construction of wills is the ascertainment of the testator's intent. (*Estate of Elkeles, supra; Estate of Kaseroff* (1977) 19 Cal.3d 272, 275 [137 Cal.Rptr. 644, 562 P.2d 325]; former Prob. Code, § 101, now § 6140.) The testator's intent is determined from the language of the will itself. (*Estate of Kaseroff, supra.*) "The intention which an interpretation of a will seeks to ascertain is the testator's intention as expressed in the words of the will, not some undeclared intention which may have been in his mind." (*Estate of Stokley* (1980) 108 Cal.App.3d 461, 467 [166 Cal.Rptr. 587].)

■ Another fundamental rule of the construction of wills requires that every word should be examined and given some effect, if possible. (*Estate of Newmark* (1977) 67 Cal.App.3d 350, 356 [136 Cal.Rptr. 628]; former Prob. Code, § 102, now § 6160.) The words used should be given their ordinary, commonsense interpretation. (*Estate of Newmark, supra;* former Prob. Code, § 106, now § 6162.) If the intent can be determined from the words actually used, the inquiry is ended. (*Estate of Newmark, supra.*) That is, an

unambiguous bequest cannot be affected by referring to other parts of the will. (Former Prob. Code, § 103, now § 6161.)

■ The sole question on appeal is the interpretation of the phrase in Anna's will: ". . . and the property so held in trust by my said trustee shall go to and vest per stirpes in my said grand-nieces and in the lawful issue of my said four nieces and in the lawful issue of any of my grand-nieces who may have died prior to the termination of this trust; . . ." Since all of Anna's grandnieces are alive today, construction is limited to the portion of the phrase, "shall go to and vest per stirpes in my said grand-nieces and in the lawful issue of my said four nieces."

■ Taking "per stirpes" denotes that the descendants of a deceased person together take the share which the deceased person would have taken. (*Estate of Berk* (1961) 196 Cal.App.2d 278, 281 [16 Cal.Rptr. 492].) This is taking by the right of representation. (*Ibid.*; former Prob. Code, § 250.)[3] The antithesis of per stirpes is "per capita." (*Lombardi* v. *Blois* (1964) 230 Cal.App.2d 191, 198 [40 Cal.Rptr. 899].) In a per capita distribution, the property is divided into as many equal shares as there are children or surviving descendants of deceased children, with each child or descendant of a deceased child taking one share. (*Estate of Berk, supra,* 196 Cal.App.2d 281-282.) This is taking in an heir's own individual right. (*Lombardi* v. *Blois, supra.*)

There are three opposing parties in this appeal.

Appellants, the children and grandchildren of two of the nieces named as trust income beneficiaries, contend that the subject phrase dictates a per stirpes distribution by dividing the principal into three parts, one share going to each of Anna's three brothers. Appellants rely on the purely technical meaning of the term "per stirpes," which signifies "taking the share of an immediate ancestor, who in turn takes the share of his next immediate ancestor and so on until a common ancestor is reached." (*Maud* v. *Catherwood* (1945) 67 Cal.App.2d 636, 644 [155 P.2d 111].) Applying this principle, appellants point out that Anna's three brothers are the generation below the most immediate ancestor, Anna's parents. Their theory is called the "three share option."

Respondents/cross-appellants (cross-appellants) are the two grandnieces designated by the will to share a one-seventh portion of the trust's income. They assert that appellants' application of the term "per stirpes" in its

---

[3] Section 250 was repealed effective January 1985, but, pursuant to current Probate Code section 241, applies to any case, as here, where the death of the testator occurs on or before January 1, 1985.

purest legal sense defeats Anna's testamentary intent by ignoring her command that the principal vest per stirpes "in my said grand-nieces and in the lawful issue of my said four nieces." Cross-appellants urge that, in giving effect to the entire phrase, the principal should be divided per stirpes into six shares, representing the four surviving grandnieces designated as trust income beneficiaries and the two "ancestral lines" of the nieces named as income beneficiaries who died with issue. This theory is called the "six share option."

Respondents, the two grandnieces designated by the will to each receive a one-seventh share of the trust's income, subscribe to the trial court's distribution of the principal under the "five share option." Respondents agree with cross-appellants that appellants' three share option fails to give full effect to all of Anna's words disposing of the corpus, but disagree with cross-appellants' six share option because they believe it comprises a per capita distribution of the trust proceeds.

■ Although cross-appellants' six share option comes the closest to fulfilling Anna's intent according to the words used in the subject phrase, none of the aforementioned theories pays heed to the language used.

■ Per stirpes denotes only a mode of distribution. (Black's Law Dict. (5th ed. 1979) p. 1030, col. 2.) A testator may select the family roots from which a stirpital division is to be made. ■ From the face of Anna's will, this, in fact, was what she did. By specifying that the trust corpus "vest per stirpes in my said grand-nieces and in the lawful issue of my said four nieces," Anna expressly and in plain language identified the family roots for the stirpital division of the trust corpus as her nine grandnieces and grand-nephews, the four grandnieces designated as income beneficiaries under the trust and the five persons who comprise the issue of the deceased nieces named as income beneficiaries.

■ While current authority holds that in a traditional per stirpes division the family roots are found not among the persons who are to take the property but among the ancestors of the takers, this rule succumbs to a contrary intent. (*Lombardi* v. *Blois, supra,* 230 Cal.App.2d 206, 207.) ■ Such a contrary intent is evident in this case by Anna's command that the designated grandnieces who reach the age of 50 (or if they have died, their issue) constitute some of the family roots under the stirpital division. The grandnieces who are alive at the trust's termination thus become both the roots and the takers.

We therefore find that the "nine share theory" most accurately conforms to Anna's intent according to the commonsense, literal interpretation of her

words. This theory does not constitute a per capita distribution, since the right of representation principle is applicable to the descendants/heirs of the designated family roots, the grandnieces and grandnephews.

The trial court's and respondents' five share theory is incorrect because it relies on the trust income provisions. No correlation of intent between the income and principal provisions concerning methods of distribution can be detected upon the face of the document. Indeed, the methods used to distribute principal and income are antithetical. The trust's income was allocated according to a per capita scheme, with the named nieces and designated grandnieces taking shares in their own right. There is no mention of the term "per stirpes" in the income distribution portion of the trust, as is clearly indicated in the principal distribution portion. In addition, the mere placement of the income and principal provisions in the same paragraph does not reveal any correlation of intent in distribution between the two provisions. Paragraphing alone is insufficient to overcome the natural meaning of the language used. (*Estate of Healy* (1917) 176 Cal. 244, 247 [168 P. 124].)

Moreover, the meaning of a clear and distinct devise or bequest cannot be changed by inference from other parts of the will, even if the devise is inconsistent with other portions. (Former Prob. Code, §§ 103, 104; *Estate of Newmark, supra,* 67 Cal.App.3d 356.) The court should refer to other parts of a will for guidance only where uncertainty may appear with regard to a single part. (*Ibid.*) Since there is no ambiguity in the phrase in Anna's will which distributes the trust's principal, the trust's income provisions are not an appropriate guide for determining division of the principal.

Further, both the trial court's theory and appellants' three share theory fail to give any meaning to the words "in my said grand-nieces and in the lawful issue of my said four nieces," and therefore violate the rule against rendering testamentary words surplusage.

Appellants' theory has no merit for the additional reason that it assumes the words "per stirpes" create both the mode of distribution and the family roots for purposes of that division. However, technical words in a will are to be given their technical sense only if no contrary intent is shown. (Former § 106; *Estate of Dodge, supra,* 6 Cal.3d 324.) If a contrary intention is revealed, all rules of construction are subordinate to the paramount rule that the testator's intent is to be carried out. (*Estate of Newmark, supra,* 67 Cal.App.3d 356.) Here, the entirety of the trust principal provision indicates Anna's intent to use "per stirpes" solely as a method of distribution and to create her own class of takers.

Finally, cross-appellants' six share theory is incorrect because it does not give full effect to Anna's words that the principal be divided per stirpes "in the lawful issue of my said four nieces." According to the ordinary meaning of this language, the nieces' issue were entitled to take per stirpes rather than the nieces who had issue.

The judgment is reversed and remanded to the superior court for further proceedings consistent with the views expressed herein.

Each party will pay their own costs on appeal.

Gilbert, J., and Abbe, J., concurred.