[No. 26492. *En Banc.* July 19, 1937.]

*In the Matter of the Estate of* MATTIE A. HAMILTON, *Deceased.*

M. L. HAMILTON, *Individually and as Executor, Appellant,* v. LORRAINE KENTON, *Respondent.*[1]

[1]Reported in 70 P. (2d) 426.

*Shorett, Shorett & Taylor,* for appellant.

*Todd, Holman & Sprague* and *Lucien F. Marion* (*Robert D. Allen,* of counsel), for respondent.

MILLARD, J.—The last will and testament of Mrs. Mattie A. Hamilton, executed November 25, 1929, named the husband of the testatrix as executor, to act without intervention of court. By that will, Mrs. Hamilton bequeathed thirty-five hundred dollars to Lorraine Kenton, who resides in New Zealand. No mention is made of any indebtedness of Lorraine Kenton to the testatrix or to the marital community composed of the testatrix and M. L. Hamilton. Mrs. Hamilton died January 31, 1930, and her will was admitted to probate February 10, 1930.

In his final account as executor of the will of his deceased wife, M. L. Hamilton asserted, as follows, an indebtedness due from Mrs. Lorraine Kenton by reason of a loan alleged to have been made by Mr. and Mrs. Hamilton to Mrs. Kenton in 1925, and claimed the right to deduct the amount of the loan, plus interest, from the bequest due Mrs. Kenton:

"The said Lorraine Kenton is now indebted to the estate in the sum of $1,000 for money loaned to the said Lorraine Kenton by M. L. Hamilton and Mattie A. Hamilton, his wife, during the year 1925, the exact date of which is unknown to the executor, together with interest thereon from the date of payment to her

at the rate of six per cent per annum; that no part of said indebtedness has been paid, and the same is now due and owing to the said estate; that the said indebtedness in the full amount of the principal and interest should be retained by the executor and credited upon the bequest herein referred to, and the balance remaining of the said bequest should be awarded and distributed to the said Lorraine Kenton."

The following written denial to the foregoing portion of the final account was filed by Mrs. Kenton:

"Paragraph VIII improperly recites that there is an indebtedness from Lorraine Kenton to the estate of the sum of $1,000 for money alleged to have been loaned to said Lorraine Kenton by M. L. Hamilton and Mattie A. Hamilton, his wife, during the year 1925, together with interest thereon from the date of payment at the rate of 6% per annum, which sum the Executor claims should be retained and credited upon the bequest of said Lorraine Kenton. Said recitation is improper for the reason that there is no evidence before the Court of the existence of such indebtedness nor any listing of said alleged indebtedness as an asset of the estate; that the same is set forth and claimed for frivolous, scandalous and impertinent reasons. This objector, Lorraine Kenton, denies that any such loan as alleged was ever made or that she is indebted in any sum whatever to decedent or her estate or to M. L. Hamilton."

The hearing on the final account was continued on successive dates from January 22 to October 27, 1936, when the matter came on for final hearing. From the decree denying any offset as a payment upon the bequest to Lorraine Kenton, M. L. Hamilton, as executor and in his individual right (he is residuary legatee and devisee), prosecutes this appeal.

The question presented by this appeal is whether the money claimed by appellant to have been advanced to the respondent was a loan or a gift.

The evidence is summarized as follows: For some

years prior to the marriage of the Hamiltons in 1899, Mrs. Lorraine Kenton, who was then a young girl, lived with Mrs. Hamilton. Mrs. Kenton was not related to either Mr. or Mrs. Hamilton. A short time previous to the marriage of the Hamiltons, Lorraine Kenton was married, after which she did not again reside with the Hamiltons. Mrs. Kenton and her husband, sometime between the years 1910 and 1915, moved to New Zealand, where they have since continuously resided.

Appellant testified that a letter was received from the respondent in 1922, wherein Mrs. Kenton stated that she had an opportunity to buy out a competitor for one thousand dollars, and, if the Hamiltons would lend to her the money, she would repay them in six months, "with good interest." Appellant testified that a part of the money was borrowed from Mrs. Hattie Dearborn (a legatee under the will in the amount of one hundred dollars) and her husband to send to Mrs. Kenton. The one thousand dollars, so Mr. Hamilton testified, was sent to Mrs. Kenton in response to her request, and Mrs. Kenton thereafter acknowledged receipt of the money, and stated that she would try to repay it when it was due, but that the loan had never been paid.

Mrs. Dearborn testified that she withdrew from the family savings in the First National Bank of Seattle two hundred dollars, and the money was then lent to Mr. Hamilton, which money, she understood, was to be sent to Mrs. Kenton. Mr. Dearborn, who has been a bailiff in the court of one of the superior court judges for King county during the past ten years, testified that in 1922 the appellant requested of him a loan of two hundred dollars, which loan was made to the appellant. He testified further that, on Sunday following the date the loan was made, he visited the Hamil-

ton's home, and that Mrs. Hamilton exhibited to him a letter from Mrs. Kenton, and that, in the letter, which he read, Mrs. Kenton requested a loan of one thousand dollars and promised that she would pay the loan, with interest, within six months.

In the inventory of the estate filed February 26, 1930, the executor did not list any account receivable from Mrs. Kenton, nor does it appear in his inheritance tax report that he included, as an asset for the purpose of computation of the tax, the indebtedness of Mrs. Kenton. It appears that appellant did not assert the present claim until after respondent and other legatees filed a petition for appellant's removal as executor.

Appellant, subsequent to the death of the testatrix, wrote a number of letters to Mrs. Kenton. In none of those letters did he suggest to Mrs. Kenton that she was indebted to appellant or to the estate. Instead, he assured respondent that she would receive her legacy as soon as he could get the money to pay the legacies.

Mrs. Kenton was not present at the hearing. No testimony was offered on her behalf, either by deposition or otherwise, in denial of the allegations of the final account, although the date of the original hearing on the final account was January 22, 1936, and the date of the final hearing was October 27, 1936.

In its summation of the evidence, the trial court clearly expressed, as follows, the conviction that the loan was made to the respondent, but that the delay from 1922 or 1925 to 1935 constituted such laches on the part of the Hamiltons that the executor should not be permitted to offset the loan against the bequest:

"Well, I had rather some other member of the court had tried this case because of the many years that I have known Mr. Hamilton, but then, I presume, if I disqualified myself on that ground I would have to do it in a good many cases. I am satisfied that he let Mrs.

Kenton have this money because he said so, and I also have confidence in his corroborating witnesses, Mr. and Mrs. Dearborn. I do not think that there is any doubt about that, and while I do not think that we ought to be governed by what a layman might call a technicality, nevertheless it does seem to me that there was, legally speaking, negligence, if not the worst kind of laches here. I do not think that any appellate court would ever sustain such an offset as Mr. Hamilton is claiming in this case, and I think, therefore, that I will have to deny.it. MR. TAYLOR: So that we can get this clear, Your Honor is recognizing that the loan was made, but that he is guilty of laches? THE COURT: I do not know whether it was a loan or what it was, but it was fifteen or twenty years ago, and I say that if Mr. Hamilton never asserted until' fifteen years thereafter that it was a loan, at least as far as anybody knows—I say that a man cannot do that and then come in after that length of time and after he has been pressed for the payment of a bequest."

· The defense suggested by the trial court of laches ᐸ or the statute of limitations was not pleaded by the respondent. The only issue presented to the trial court was whether the loan was made by the Hamiltons to Lorraine Kenton.

 We cannot agree with the contention of counsel for respondent that the testimony of the witnesses respecting the contents of the letters from Mrs. Kenton to the Hamiltons was incompetent. It is urged that no demand was ever made by appellant upon respondent to produce a copy of any of the letters, which would be the next best evidence, in the absence of the original letter. It is insisted that the giving of notice to produce and failure to produce were conditions precedent to the admissibility of the oral testimony, and, as there was not a compliance with those conditions, the testimony was not competent.

This is not a situation where the sender of a letter endeavors to prove its contents by a copy without hav-

ing produced or made demand for the original. In the case at bar, the receiver of the letter, after testifying that the letter was lost and that a diligent effort had been made to find it in the place where it would be kept, proved the contents of the letter by secondary evidence.

In *State v. Erving,* 19 Wash. 435, 53 Pac. 717, while holding that, by cross-examination, the appellant had opened the door to the offending re-direct examination, we also held that the receiver of a letter could testify as to its contents when the proper foundation was laid, as was done in the case at bar, for such secondary evidence. We said:

"The next assignment is that the court committed error in permitting witness Garrison—a brother of the deceased—to testify on re-direct examination to the contents of a letter purporting to have been written by the deceased from Seattle on July 3, 1894. The objection at the trial was that it was not the best evidence. The witness testified that he did not know where the letter was, that he could not produce it in court, that he had no idea where it could be found, and, as we think, laid the foundation for the introduction of the secondary evidence. There is another reason why the ruling cannot be disturbed. On cross-examination the appellant had asked the witness what was said by the deceased in that letter, and thus opened the door to the re-direct examination which followed."

The secondary evidence was admissible to prove the contents of the letters, and in such cases the fact to be established should be proved by a fair preponderance of evidence and with reasonable certainty. The trial court expressed belief in the veracity of the appellant and in the veracity of the two witnesses. Clearly, the appellant sustained the burden of proof that the loan was made by the Hamiltons to Mrs. Kenton.

The trial court's suggested defense of laches or the

statute of limitations was not raised by the respondent.

We have heretofore recognized, in cases such as this, the right of the executor to retain sufficient of the bequest to pay the debt, although the debt is barred by the statute of limitations prior to the death of the testator. *In re Smith's Estate,* 179 Wash. 417, 38 P. (2d) 244.

If the money received by the respondent was not a loan, it must have been a gift. There was no proof that a gift was made of the money in question to the respondent. Proof of a gift must be by clear and convincing evidence, and the negative inference which follows from the fact that no demand for repayment was made for a period of years, and that the debt was not listed originally in the inventory of the estate, is not the clear, positive proof to establish a gift that is required. The rule is that a gift will not be presumed, but it must be shown by clear, convincing, and satisfactory evidence. *Dingley v. Robinson,* 149 Wash. 301, 270 Pac. 1018.

The decree is reversed, and the cause remanded with direction to the trial court to allow the right of retainer requested by the appellant.

Main, Holcomb, Beals, Blake, and Geraghty, JJ., concur.

Steinert, C. J. (dissenting)—The question presented by this appeal is, as stated in the opinion of the majority, whether "the money claimed by appellant to have been advanced to the respondent was a loan or a gift." The majority concludes that it was a loan, and rests its conclusion upon the evidence as summarized in the prevailing opinion and upon what the majority conceives to be a holding to that effect by the trial court in its oral opinion expressed at the end of the trial on the merits.

I do not believe that either the facts or the trial court's opinion, when analyzed, support the majority view.

Mrs. Hamilton's will was executed November 25, 1929. Respondent was therein bequeathed the sum of $3,500. Other specific bequests aggregated $3,550. Appellant was made the residuary devisee. Appellant, as executor, made an inventory of the estate on February 26, 1930, and filed the same on March 11, 1930. The estate, consisting of both separate and community real property and community personal property, was itemized in detail and was subsequently appraised at $40,460. Included in the inventory of the personal property were three promissory notes, each in the sum of $2,000 and owing by persons other than those involved in this appeal. I mention these notes because they constituted an indebtedness to the estate. However, no mention or suggestion whatever was made in the inventory of any alleged indebtedness of respondent to the estate.

The executor filed his inheritance tax report on January 16, 1931. That report was upon the basis of a bequest of $3,500 to respondent, a series of bequests to other individuals and a residuary devise to appellant, but it made no mention of, nor did it include, any claim of indebtedness from respondent as an asset of the estate.

So far as the record now before us discloses, nothing further was done in the estate until November, 1935. It may be stated, however, that in 1933 Mr. Hamilton petitioned the court for an order striking from the inventory four parcels of real estate upon the ground that they were his separate property but had been erroneously inventoried by him as being part of his wife's separate estate. That petition provoked a contest by a number of legatees, including respondent, and

culminated in an appeal by Mr. Hamilton to this court. *In re Hamilton's Estate,* 182 Wash. 81, 45 P. (2d) 36. Upon that appeal, Mr. Hamilton's petition was denied. The opinion in that case narrates the factual background involved in this controversy.

In the meantime, a situation had arisen which, in my opinion, presents this case in its true light. In her will, Mrs. Hamilton had directed her executor to pay eight of the bequests therein mentioned, including that of the respondent, within three years after her death. These bequests were not paid as directed by her. As disclosed by the record, this was due to the fact that, for some reason or other, the executor did not have the available cash. However, there are many letters in evidence, written by Mr. Hamilton to respondent between 1930 and 1933, in which he recognized the bequest to respondent in its full amount and promised repeatedly that it would be paid just as soon as money due the estate could be collected. There is not a word, nor even a hint, in any of this correspondence concerning an alleged previous loan to respondent nor that any amount would be deducted from her legacy.

On November 25, 1935, respondent and two other legatees named in the will filed their petition in the probate court to have the executor removed because of his failure to pay the bequests and for other alleged mismanagement of the estate. The petitioners were the same parties as those who had previously contested Mr. Hamilton's attempt to have his original inventory amended. Citation issued upon the petition and directed the executor to show cause why the petition should not be granted. Thereafter, on December 24, 1935, the executor filed his final account and petition for distribution, wherein, *for the first time,* it was asserted and alleged that respondent was indebted to the estate in the sum of one thousand dollars, with in-

terest at six per cent per annum from 1925, the year in which the money was alleged to have been loaned to respondent by Mrs. Hamilton and her husband, the present executor. In his testimony, given at the trial below, Mr. Hamilton stated that the loan was made in 1921 or 1922.

Now, assuming that the Hamiltons advanced one thousand dollars to the respondent sometime between 1921 and 1925, it is very strange that, if it was intended as a loan, Mrs. Hamilton made no mention of it in her will, but, on the contrary, left an unconditional bequest to respondent of a fixed, definite and larger amount. It is still more surprising that, for more than five years after his wife's death, Mr. Hamilton made no such contention as is now advanced. It is remarkable that he thought of it only after he had had considerable difficulty and litigation with respondent. The fact that he not only kept silent in that respect for so long a time, but also repeatedly declared that the full amount of the bequest would be paid to respondent just as soon as collections permitted, convinces me that, even though one thousand dollars was advanced to respondent in 1922 or 1925, it was intended as a gift and not as a loan. It is shown by the record that respondent had lived with Mr. and Mrs. Hamilton for many years, had always called her "Mother," and. that there was a close personal relationship between respondent and the Hamiltons.

Now let us turn to the trial court's oral decision. The majority seems to think that the court expressed a conviction that the money advanced to respondent was a loan. I do not so interpret the court's remarks.

It is apparent that the trial judge felt some embarrassment in determining a matter involving the credibility of persons with whom he was intimately acquainted. It is true that, after expressing his con-

fidence in the witnesses, he did say that he was satisfied that Mr. Hamilton "let Mrs. Kenton have the money." But he did not say that it was a *loan*. In fact, when appellant's counsel challenged the court's attention to that very issue, the court said:

"I do not know whether it was a loan or what it was, but it was fifteen or 20 years ago, and I say that if Mr. Hamilton never asserted until fifteen years thereafter that it was a loan, at least as far as anybody knows—I say that a man cannot do that and then come in after that length of time and after he has been pressed for the payment of a bequest."

This does not suggest to me, as it seems to suggest to the majority, a mere defense of laches or limitations asserted by respondent. In the light of all the evidence as above indicated, it means simply that, having taken a position, over a period of fifteen years, consistent with the recognition of the advancement as a gift, the executor could not, when pressed for payment, and because of resentment growing out of subsequent litigation, reverse his mental conception and impress upon the transaction, *nunc pro tunc*, the character of a loan.

For these reasons, I think that the judgment should be affirmed.

TOLMAN and ROBINSON, JJ., concur with STEINERT, C. J.