[No. 31703. *En Banc.* October 29, 1951.]

RUTH JOHNSON, as *Administratrix, Respondent,* v. ERNEST C. HUNTLEY, as *Supervisor of the Inheritance Tax Division, Appellant.*[1]

[1]Reported in 236 P. (2d) 776.

The *Attorney General* and *William C. Klein, Assistant,* for appellant.

*E. P. Whiting,* for respondent.

WEAVER, J.—The question presented is: May an indebtedness owing to an ancestor be retained by his personal representative from a distributive share of his estate inherited by descendants of the debtor?

Charles and Ernest Carlson were brothers. In 1908 and 1909, Ernest loaned Charles money. Charles gave him his promissory notes. These notes have never been paid. About 1933, Charles died insolvent. Three children survived him. October 27, 1949, Ernest died intestate. His heirs were a brother and sister, Hjalmar and Hulda, and the three children of Charles. Under our statute of descent and distribution, Hjalmar and Hulda are each entitled to one-third of Ernest's estate, and the niece and nephews, the remaining one-third.

During the administration of Ernest's estate, the supervisor made and filed findings and a determination of inheri-

tance tax due from the estate under Rem. Rev. Stat. (Sup.), § 11202-1c [P.P.C. § 974-91]. He classified the niece and nephews as class "C" beneficiaries. The administratrix filed objections to the findings, claiming that none of the estate was distributable to class "C" beneficiaries because the indebtedness of their deceased father, Charles, to his brother, Ernest, exceeded what otherwise would have been their distributive share of the estate. The trial court sustained the objections of the administratrix and held that the debt of Charles might be retained from the distributive share of the niece and nephews, thus casting upon the children the debt of the parent. As a part of the decree entered, the trial court provided:

"That said administratrix shall hold and retain the balance of the funds in her hands until the time of appeal from this decree has expired, and in the event of an appeal to the Supreme Court of the State of Washington, until such time as said appeal has been finally determined and the remittitur from the Supreme Court is filed herein, . . .

"That . . . in the event an appeal is taken, the administratrix shall, upon the filing of a remittitur from the Supreme Court with the clerk of this court, make such distribution of the remaining funds in her hands as may be directed by said remittitur. . . ."

The question to be decided is whether the right of retainer, which, it is conceded, would have been available to the administratrix against the distributive share of Charles had he been living, can be asserted against his children.

The earliest reported case involving the right of retainer is *Jeffs v. Wood*, 2 P. Wms. 128, 24 Eng. Rep. 668 (1723). The early rationale of the doctrine was the avoidance of multiplicity of suits. Later, emphasis was placed upon the "plain moral and legal duty of the debtor to pay his debt to the estate," and the hypothesis developed that there is no equitable right to participate in the distribution of the estate until the debtor's obligation to it is discharged. It is based upon the theory that the *debtor* has already received value from the estate. *Webb v. Fuller*, 85 Me. 443, 27 Atl. 346, 22 L. R. A. 177.

■ However, the right of retainer can only be applied *where the same person is entitled to receive the legacy and is liable to pay the debt.* The cross-demands must be payable *in the same right.* *McLaughlin v. Barnes,* 12 Wash. 373, 41 Pac. 62. The true basis of the right of retainer is the possession by the distributee of a portion of the decedent's estate. *Turner v. Turner,* 1 Ch. 716, 21 Ann. Cas. 810. This, the niece and nephews never had.

In those cases in which we have discussed and have adopted the doctrine of retainer, we have gone no further than to apply it when the relationship of creditor and debtor (or the assignee of a debtor) exists. *Boyer v. Robinson,* 26 Wash. 117, 66 Pac. 119 (a creditor of the devisee acquired no greater right in the estate than that held by the devisee himself); *In re Smith's Estate,* 179 Wash. 417, 38 P. (2d) 244 (retainer exercised against distributive share, although debt barred by statute of limitations); *In re Hamilton's Estate,* 190 Wash. 646, 70 P. (2d) 426; *In re Bowers' Estate,* 196 Wash. 79, 81 P. (2d) 813; *In re Jackson's Estate,* 200 Wash. 116, 93 P. (2d) 349, 123 A. L. R. 1281 (an assignee of a legatee acquired no greater right in the estate than that held by the legatee himself).

In *In re Braden's Estate,* 122 Wash. 669, 211 Pac. 743, we adhered closely to the necessity of the existence of the relationship of debtor and creditor *in the same right,* and refused to apply the doctrine of retainer when such relationship, in its strictest sense, was not present. The appellant and her husband, as a community, were indebted to appellant's father, who later died intestate. The right of retainer by the administratrix of decedent's estate was denied upon the theory that a community obligation could not be satisfied out of the inheritance of the appellant. The one inheriting was not the debtor; the wife inherited, not the debtor community.

In each case in which we have sanctioned the right of retainer, there has existed a personal relationship of creditor and debtor between the estate and distributee. In each case the debtor had already received value from the estate

of the decedent and had an "obligation to contribute to the fund." In the instant case, however, no portion of decedent's estate had ever been in the hands of the distributees against whom the right of retainer is claimed. They did not inherit their father's debts. They owed no obligation to the estate of their uncle, a portion of which had been *cast* upon them by operation of law. Hence, as in *In re Braden's Estate, supra,* there is no basis for the application of the doctrine of retainer.

We recognize that the authorities are in conflict upon the question here involved. Some courts recognize the right of the personal representative of the decedent to retain a debt from the distributive share of descendants of the debtor, and some do not. These divers views are the result of the difference in opinion as to whether statutes providing for succession in the case of the death of an immediate ancestor cast the inheritance directly upon the heir, or whether the heir, taking in the place of his ancestor, inherits simply as his representative, and therefore takes only what such ancestor would have taken had he survived the decedent. The cases are collected and appear in annotations in 1 A. L. R. 1037, 30 A. L. R. 781, 75 A. L. R. 888, 110 A. L. R. 1389, and 164 A. L. R. 747.

The right of the niece and nephews to inherit from the estate of their uncle, Ernest Carlson, is based upon Laws of 1927, chapter 160, § 1, subd. 3, p. 150 (Rem Rev. Stat., § 1341, subd. 3 [P.P.C. § 199-1] which provides:

"If there be no issue, nor husband, nor wife, nor father and mother, nor either, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, *by right of representation*." (Italics ours.)

"Right of representation" is defined in Rem. Rev. Stat., § 1355 [P.P.C. § 199-33], as follows:

"Inheritance or succession by right of representation takes place when the descendants of any deceased heir take the same share or right in the estate of another that their parent would have taken if living. Posthumous children are considered as living at the death of their parent."

■ The phrase "right of representation" appears eight different times in § 1341, including its use in subdivision 3. It appears twice in subdivision 1, and at least once in each subdivision of the entire section, except subdivisions 4 and 6, in which the context does not call for its use. In seven of the eight times it is used, it is preceded by, and contrasted with, *equal shares, share equally,* or *share the estate equally.* The phrase, *equal shares,* in each instance refers to heirs of the same degree. But, if an heir of that degree is deceased leaving children, the children then take by *right of representation.* The term, *equal shares,* is used in the statute instead of *per capita.* In the law of descent and distribution, "taking by representation" means taking *"per stirpes."* *Housley v. Laster,* 176 Tenn. 174, 140 S. W. (2d) 146; Bouvier's Law Dictionary (8th ed.) 2558. It is clear that, in our statutes, the term *right of representation* is used instead of the Latin phrase *per stirpes.*

■ *"Per capita"* means by the head as individuals, while *"per stirpes"* means by or according to stock or root; by representation. The term *"per stirpes"* denotes the *mode* of the descent and distribution of the intestate's estate where parties entitled take the share which their stock, if living, would have taken. *Buxton v. Noble,* 146 Kan. 671, 73 P. (2d) 43; *Central Hanover Bank & Trust Co. v. Helme,* 121 N. J. Eq. 406, 190 Atl. 53. The term does not refer to substitutional parties or property, but merely describes how distributees are to take, and denotes the mode of the division of the property which the law of descent and distribution *casts* upon them.

■ The words *right of representation* in subdivision 3 of Rem. Rev. Stat., § 1341, refer only to the fractional portion of the estate inherited. Rem. Rev. Stat., § 1355, does no more than define the *quantum* of the estate inherited by each representative within the class. It contemplates a blood relationship and designates that the property goes to the nearest stock. If the relationship of debtor and creditor exists between the estate and the "nearest stock," the right of re-

tainer may be exercised; if that relationship does not exist, the doctrine of retainer does not apply.

This conclusion is well supported by *Succession of the Misses Morgan*, 23 La. Ann. 290:

"Representation is a fiction of law, the effect of which is to put the representative in the place, degree and rights of the person represented. . . . A dead man can neither get nor give; he can neither inherit nor transmit. The representative of the deceased person does not receive by transmission from that person and *jure alieno*; he receives by designation of law and *jure suo*. It follows therefore that the representative is not by the fact of representation merely rendered personally liable for the debts of the person whom he represents. He is endowed by the law with the rights of the latter in a certain succession, but is not laden with the obligations of that latter to the rest of the world. *He is not an accepting heir, but a designated representative*." (Italics ours.)

and *Ellis v. Dumond*, 259 Ill. 483, 102 N. E. 801:

"The children of Henry P. Dumond are not personally liable for his debts or for any judgment which was secured against his estate. Not being liable for the debts of their father, we know of no theory upon which their interest in these lands can be subjected to the payment of the balance due on this claim."

and a case which follows it, *Russell v. Bulliner*, 370 Ill. 260, 18 N. E. (2d) 879:

"The Descent Act defines the *quantum* of the estate that the grandchildren will take from their grandfather. If the appellee's contention were sustained it would follow, logically, that their share in the estate would be subject to the debts due from their immediate ancestor to his general creditors. In *Ellis v. Dumond, supra*, we pointed out that the immediate ancestor never owned the land but that the title passed by descent from the grandfather to the grandchildren. In the case before us Frederick L. Bulliner died first and never had any interest in the estate of his father. The distributive share of John L. Bulliner's minor grandchildren was in no way affected by the debt due."

 We think that the manifest meaning of the code sections, as quoted, is that the children of a predeceased brother "represent and stand in the place of their deceased

parent" in the sense that they together take, *per stirpes*, from their uncle, one share of the estate. *Harrison v. Barber*, 200 Ga. 225, 36 S. E. (2d) 662.

We hold that our statute casts the inheritance directly upon the heir, free of any claim there may be against his immediate ancestor; that the administratrix may not retain the amount of Charles' debt to Ernest as against the distributive share of Ernest's niece and nephews; and that their distributive share is taxable at the rate applicable to class "C" beneficiaries, as defined in Rem. Supp. 1943, § 11202.

Accordingly, the decree appealed from is reversed, with directions to determine the inheritance tax due the state of Washington and to make distribution in a manner consistent with this opinion.

ALL CONCUR.

[1]Reported in 236 P. (2d) 771.