No. 90-058

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

In the Matter of the Estate of
EDITH S. HAGGERTY, a/k/a Edith
Haggerty, a/k/a Edith S. Sagunsky,
a/k/a Edith Sagunsky, Deceased.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John S. Warren, Schulz, Davis & Warren, Dillon,
Montana

For Respondent:

W. Cecil Jones, Jones & Erb, Dillon, Montana

James J. Screnar, Nash, Guenther, Zimmer & Screnar,
Bozeman, Montana

Submitted:   June 7, 1990

Decided:   November 20, 1990

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant, a legatee to the estate of Edith S. Haggerty, appeals from two orders, one granting a motion to invalidate a successor's agreement between himself and his brother, and, another denying a motion to offset his brother's inheritance by an indebtedness of his brother to the estate. We affirm.

The issue before us is whether the District Court of the Eighteenth Judicial District, Judge Larry Moran presiding, abused its discretion in denying appellant's motion on the ground that the issue of the offset had been decided in an earlier motion before the court, Judge Gary presiding. The parties present the following issues or arguments relating to the disallowance of an offset by the court as follows:

1.   Is the estate's right to offset Paul Sagunsky's inheritance against his indebtedness to the estate superior to Judy Sagunsky's claims as Paul's judgment creditor?

2.   Should the District Court have disregarded the corporate entity of Tipp, Inc. and offset Paul Sagunsky's inheritance against Tipp's debt owed to the estate?

3.   What is the value of Paul Sagunsky's debt to the estate for offset purposes?

Paul and Judith Sagunsky were married in 1978. During the marriage, Mrs. Sagunsky lent her husband money for his business, Halse Motors, Inc., which later became Tipp, Inc. The money came from a trust set up for the benefit of Mrs. Sagunsky and her two children after her first husband's death in an airplane accident.

When the Sagunskys were divorced in 1982, the court determined that Paul owed Mrs. Sagunsky over $50,000. Mrs. Sagunsky obtained a judgment against Paul for that amount in 1986.

Edith Haggerty died testate December 18, 1987, leaving her entire estate to her two sons, Paul and Byron Sagunsky. Mrs. Haggerty's will had been executed April 15, 1977, before her marriage to Thomas H. Haggerty in 1979 and before any of the transfers of property in question had been made to Paul in 1983 through 1986. Haggerty served as her personal representative and is not a legatee. The value of the estate was approximately $150,000. In May 1988, Mrs. Sagunsky attempted to levy against Paul's half interest in the estate, but the levy was not paid.

On September 2, 1988, Paul and Bryon entered into a successors' agreement. According to the terms of the agreement, Byron would receive Paul's share of the estate since Paul had received money from his mother totalling approximately $75,000 plus a $175,000 secured loan to Paul's business, Tipp, Inc. At the time of his mother's death, Paul's business was insolvent, and Paul testified that the corporation was a "non-operating entity."

Mrs. Sagunsky moved to set aside the successors' agreement, and on March 16, 1989, a hearing was held. The court invalidated the agreement and ordered that one-half of the net estate be distributed to each of the brothers. The court also held that Mrs. Sagunsky had a valid claim against Paul's half-interest. The court stated that if Byron wished to further contest the issue, he could request an additional hearing under the provisions of § 72-3-912, MCA, regarding the offset of the debt against the estate.

3

Byron requested a second hearing. Judge Moran ruled that the issue had been previously determined in ruling on Mrs. Sagunsky's motion and denied Byron's motion. From this judgment Byron appeals.

## I

Issue one is whether the District Court abused its discretion in dismissing Byron Sagunsky's motion.

We must first examine whether the District Court decided the issue of the offset of Paul Sagunsky's indebtedness to the estate when it heard the motion brought by Mrs. Sagunsky. On November 1, 1988, Mrs. Sagunsky moved to invalidate the successors' agreement between Paul and Byron Sagunsky. The brothers had agreed that Byron would receive Paul's share of the estate because the decedent had loaned to Paul and his business, Tipp, Inc., amounts in excess of $250,000.

The court stated that "[i]t would appear" that the debts "are not an offset against Paul's distributive share." In addition, the court stated that the offset issue "could be declared moot based upon the findings of the Court hereinafter set forth." We agree that the conclusions of the court regarding the successors' agreement were also dispositive of the offset issue.

In reaching its decision regarding the successors' agreement the court considered several factors: 1) the successors' agreement was entered into on September 2, 1988, after Mrs. Sagunsky had filed a claim against the estate on May 27, 1988; 2) the successors' agreement had the effect of defeating a legitimate debt owed to Mrs. Sagunsky; 3) the will contained no provision

4

regarding the amounts advanced to Paul; 4) no contemporaneous writings with the advances stated that the amounts should be deducted from Paul's share of the estate; 5) the personal representative filed an amended inventory declaring the loans to Paul to be valueless; and 6) Byron and his family received gifts from his mother, including money for schooling and $16,000 as successor to a trust fund. The court thereby gave effect to § 72-2-515, MCA, which states:

> Property which a testator gave in his lifetime to a person is treated as a satisfaction of a devise to that person, in whole or in part, only if the will provides for deduction of the lifetime gift or the testator declares in a contemporaneous writing that the gift is to be deducted from the devise or is in satisfaction of the devise or the devisee acknowledges in writing that the gift is in satisfaction. For purpose of partial satisfaction, property given during lifetime is valued as of the time the devisee came into possession or enjoyment of the property or as of the time of death of the testator, whichever occurs first.

The court invalidated the successors' agreement, treating the amounts the decedent advanced to Paul as gifts, rather than advances or loans.

Byron claims that the Uniform Probate Code requires the estate to offset Paul Sagunsky's inheritance against his indebtedness to the estate:

> The amount of a noncontingent indebtedness of a successor to the estate if due, or its present value if not due, shall be offset against the successor's interest; but the successor has the benefit of any defense which would be available to him in a direct proceeding for recovery of the debt.

Section 72-3-912, MCA. This section of the Uniform Probate Code, now adopted in Montana, is the codification of the common law

"right of retainer." See Matter of Will of Cargill (Minn. App. 1988), 420 N.W.2d 268. The earliest reported case involving this equitable doctrine was Jeffs v. Wood (1723), 2 P.Wms. 128, 24 Eng.Rep. 668. At that time, the rationale of the right of retainer was to avoid multiple lawsuits. Later the courts emphasized the moral and legal obligation of the debtor to pay his debt to the estate before participating in its distribution. Johnson v. Huntley (Wash. 1951), 236 P.2d 776, 777.

The Uniform Probate Code does not address the priority of repayment when the successor owes both the estate and another creditor, as here. When the Code does not afford guidelines, "the principles of law and equity supplement its provisions." Section 72-1-104, MCA. Most courts have ruled that the right of the estate to repayment is superior, even though the creditor's claim is reduced to judgment. Hustad v. Reed (1958), 133 Mont. 211, 219, 321 P.2d 1083, 1088; In re Bergmann's Estate (Fla. App. 1974), 305 So.2d 273; In re Eaton's Estate (N.Y.A.D. 3 Dept. 1953), 121 N.Y.S.2d 836, 839; Smith v. Citizens National Bank in Okmulgee (Okla. 1957), 313 P.2d 505, 509.

Mrs. Sagunsky claims that the right of retainer statute does not apply because the sums in question were gifts, rather than loans. No doubt exists that the $117,690 transfer to Tipp, Inc., evidenced by a promissory note and mortgage, was a loan. However, the statute specifies that "the amount of noncontingent indebtedness of a _successor_ to the estate" shall be offset. Section 72-3-912, MCA. (Emphasis added.)

6

The corporation is a separate and distinct entity and is not a successor to the estate. See In re Russell's Estate (1936), 102 Mont. 301, 308, 59 P.2d 777, 780 (creditors of corporation cannot ordinarily assert claims against estate of controlling shareholder). Tipp, Inc., rather than Paul, owed $117,690 to the decedent. Since a corporation is not a successor to the estate, corporate indebtedness is not subject to the right of retainer.

At issue, then, are the other approximately $80,000 in bank drafts made out to Paul during the period from 1983 to 1986. As noted above, the court treated these amounts as gifts, although Paul and Mr. Haggerty testified that they were loans. The test is whether the parties considered these transfers to be binding obligations. See In re Tarbell's Estate (N.Y. Sur. 1950), 99 N.Y.S.2d 902. In the Tarbell case the widow of the decedent claimed that a promissory note, executed by her son to her, which she later endorsed to her husband, should be offset against the son's legacy. The transfer from the widow to the decedent of the note, which was void because of the statute of limitations, was made for business or tax reasons. The court found that no binding obligation existed between the decedent and the son where the only evidence of the debt was an entry made in the decedent's account book. The court stated that "[t]he entry made in his book of account is not a written agreement, signed by him [the decedent]." Tarbell, 99 N.Y.S.2d at 907.

In this case, while the $80,000 in bank drafts were noted as loans in records kept by the decedent, Mr. Haggerty and Paul testified that no demand had ever been made for the sums. No

7

promissory notes or agreements were signed, and Paul did not attempt to repay the sums. In his testimony, Mr. Haggerty agreed that the decedent knew the likelihood of repayment was not very great and did not seriously expect repayment from Paul.

An obligation arises either from the contract of the parties or by operation of law. Section 28-1-102, MCA. In Montana, all contracts may be oral except as prohibited by statute. Section 28-2-901, MCA; Keil v. Glacier Park, Inc. (1980), 188 Mont. 455, 460, 614 P.2d 502, 505. However, a contract cannot be created when performance is entirely optional with the promisor. Gray v. American Express Co. (1984), 743 F.2d 10, 19; Restatement (Second) of Contracts § 77 comment a (1979). Thus, Paul did not have a binding obligation to repay the loans.

Further, a close relationship between the parties, such as a husband-wife or parent-child relationship, gives rise to a presumption that the transfer is a gift. Detra v. Bartoletti (1967), 150 Mont. 210, 217, 433 P.2d 485, 488. Here the parent-child relationship and the absence of evidence of a binding obligation, as well as inter vivos gifts to the other devisee, Byron, and his family, support a finding that the transfers to Paul were gifts. In addition, Byron received $16,000 as successor to a trust fund after his mother's death. The evidence supports the District Court and we will not overturn the court's orders regarding probate of an estate absent clear abuse of discretion. In re Estate of Nelson (Mont. 1990), 794 P.2d 677, 679, 47 St.Rep. 1218, 1221.

8

Since the court in ruling on Mrs. Sagunsky's motion found the transfers to be gifts, rather than advances or loans, the decision is also dispositive of the issue concerning the offset of Paul's "indebtedness" to the estate pursuant to the right of retainer statute, § 72-3-912, MCA. We affirm the District Court's dismissal of Bryon Sagunsky's motion on the ground that the issue had been previously decided in the ruling on Mrs. Sagunsky's motion.

## II

The second issue is whether the District Court should have disregarded the corporate entity of Tipp, Inc. and offset Paul Sagunsky's inheritance against Tipp's debt owed to the estate.

We need not discuss this issue because of our holdings above.

## III

The third issue is the value of Paul Sagunsky's debt to the estate for offset purposes.

Mrs. Sagunsky argues that the value of Paul's personal debt to the estate for offset purposes should be the same as the value of the debt for inventory purposes. Since we have affirmed the District Court's decision that the inter vivos transfers to Paul should not be offset, we need not consider this argument.

However, we note that the value the personal representative must use for estate inventory purposes is the "fair market value as of the date of the decedent's death." Section 72-3-610(2), MCA.

The right of retainer statute, § 72-3-912, MCA, on the other hand, does not call for the fair market value of the debt to be deducted, but instead mandates that the "amount" of the successor's indebtedness be deducted from his share or, if the indebtedness is

9

not due, its "present value." To hold that a past due uncollectible debt is to be valued at fair market value for purposes of offset against the indebted successor's share of the estate would render the offset provision, § 72-3-912, MCA, meaningless.

In many cases, the debt of the successor to the estate will be uncollectible and thus valueless. That a debt cannot be collected does not mean, if a binding obligation between the decedent and the successor exists, that the amount of the debt should not be offset as the statute demands. Therefore, a situation may arise where a debt is given different values for the estate inventory and the offset provisions of § 72-3-912, MCA.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10